81 P.3d 1178

Aaron CHOCK, Plaintiff–
Appellant/Cross–
Appellee,

v.

GOVERNMENT EMPLOYEES INSUR-
ANCE COMPANY, and Geico Casualty
Company, Defendants–Appellees/Cross–
Appellants

and

John Does 1–10; Jane Does 1–10; Doe
Partnerships 1–10; Doe Corporations 1–
10; Doe "Non–Profit" Corporations 1–
10; Doe Entities 1–10; and Doe Govern-
mental Entities 1–10, Defendants.

Geico Casualty Company and Government
Employees Insurance company, Plain-
tiffs–Appellees/Cross–Appellants,

v.

Aaron Chock, Defendant–
Appellant/Cross–
Appellee.

No. 23356.

Supreme Court of Hawai'i.

Dec. 26, 2003.

George W. Playdon, Jr. and Kelvin H. Kaneshiro, on the briefs, for Appellant/Cross–Appellee Aaron Chock.

J. Patrick Gallagher and Michael N. Tanoue, on the briefs, for Appellees/Cross–Appellants Government Employees Insurance Company and GEICO Casualty Company.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Plaintiff–Appellant/Cross–Appellee Aaron Chock appeals from the final judgment entered on April 7, 2000 by the Circuit Court of the First Circuit, the Honorable Marie N. Milks presiding, in favor of Defendants–Appellees/Cross–Appellants Government Employees Insurance Company and GEICO Casualty Company [hereinafter, GEICO], denying Chock uninsured motorist (UM) benefits and awarding attorneys' fees and costs in favor of GEICO and against Chock. On appeal, Chock contends that the circuit court erred: (1) in concluding that Chock was not entitled to UM benefits under the GEICO insurance policies at issue; (2) in concluding that there was a material misrepresentation in the application for the GEICO policies at issue, thus rendering the policies void or voidable; (3) in concluding that Chock was not entitled to "stacked" UM benefits under the GEICO policies at issue; and (4) in awarding GEICO attorneys' fees pursuant to Hawai'i Revised Statutes (HRS) § 607–14 (Supp.1998) and costs pursuant to Hawai'i Rule of Civil Procedure (HRCP) Rule 54(d) (2000).

Based on the following, we vacate the award of attorneys' fees to GEICO and affirm in all other respects.

## I. BACKGROUND

### A. Factual Background

During the evening of June 24, 1995, Chock spoke with Kent "Kimo" Stone, his best friend, over the telephone. Stone owed Chock a little less than $6,000 for marijuana; Stone told Chock that he (Stone) had some money that he wanted to pay Chock, and the two agreed to meet at a parking lot on the Honolulu side of the Wilson Tunnel. Chock drove a 1995 Chevrolet pickup truck owned by his girlfriend, Tracie Lee, to meet Stone. Chock had Lee's permission to drive the truck. Chock arrived at the parking lot and backed into a parking space, but left the motor running. After a few minutes, Wayne Hunt, Stone's roommate and an acquaintance of Chock's, arrived and pulled his car in next to Chock's with the driver's side door of each car very close to one another. Hunt also left

the motor running. The two asked each other what they were doing at the parking lot, after which Chock turned away to adjust his radio. When Chock looked back, Hunt was holding a shotgun in both hands and leaning on the window ledge of his (Hunt's) car. Hunt shot Chock twice, injuring Chock in the head and left arm. Chock was able to drive to K;ane'ohe, where he received help. As a result of the shooting, Chock incurred medical bills of approximately $500,000.

Chock testified that, prior to the shooting, he had no reason to fear either Stone or Hunt. Chock also did not know that Hunt possessed a shotgun or any other weapon. When Chock spoke to Hunt, he could not see a shotgun in Hunt's car and still expected Stone to arrive.

The parties stipulated that for purposes of UM benefits, Hunt was uninsured on the day of the shooting.

Lee (Chock's girlfriend) applied for and received an insurance policy with GEICO in April 1995 for her truck at the time, a 1987 Chevrolet pickup. She indicated that she was the driver of the truck 100 percent of the time. In May 1995 she purchased a new truck (the 1995 Chevrolet pickup); she contacted GEICO to notify them of the new truck, but made no other changes to her policy. The circuit court ruled that Chock and Lee both regularly used the 1995 Chevrolet truck and that Lee's failure to notify GEICO that Chock was an additional driver constituted a misrepresentation of fact.

Chock lived on and off with his father, Glenn Chock (Glenn). Glenn applied for and received an insurance policy with GEICO in June 1994, but did not identify Chock as a driver in the household and did not list Chock in response to the inquiry on the application as to whether there were any residents age fifteen or older who were not listed as drivers. Glenn signed a renewal form in April 1995, two months before the shooting, and did not list Chock as a household resident age fifteen or older not listed as a driver. However, Lee testified that Chock was living at his father's house at the time of the shooting, and the circuit court ruled that Chock was a resident of his father's household since mid-April 1995. The circuit court also ruled that Glenn's failure to list Aaron Chock as a non-driver resident constituted a misrepresentation of fact.

Glenn, on behalf of his son, made a demand for Uninsured Motorist (UM) coverage under both his and Lee's GEICO insurance policies.

### B. *Procedural Background*

Chock filed a complaint for declaratory judgment against GEICO on October 31, 1996, in which he asked the circuit court to rule that he was entitled to UM benefits under Glenn's and Lee's policies. The following day, GEICO filed a complaint for declaratory judgment against Chock in which GEICO asked the circuit court to rule that Chock was not entitled to UM benefits under Glenn's and Lee's policies. In February 1997, the circuit court granted GEICO's motion to consolidate the two cases. After a bench trial in March 1999 the circuit court ruled in favor of GEICO, denying Chock UM benefits and awarding attorneys' fees and costs to GEICO. Chock appealed and GEICO filed a cross-appeal in which it argued that the circuit court erred in ruling that Chock's injuries were "caused by accident."

## II. *STANDARDS OF REVIEW*

We review the circuit court's conclusions of law *de novo. Troyer v. Adams,* 102 Hawai'i 399, 409–410, 77 P.3d 83, 93–94 (2003). We review the circuit court's findings of fact under the "clearly erroneous" standard. *Id.* at 410, 77 P.3d at 94.

## III. *DISCUSSION*

### A. *UM Benefits*

Chock argues that he is contractually and statutorily entitled to UM benefits under Glenn's and Lee's policies. We disagree. The circuit court correctly ruled that Chock was not entitled to UM benefits under the GEICO policies because Chock's gunshot injuries did not arise out of the operation, maintenance, or use of an uninsured motor vehicle.

### 1. Whether Chock's injuries must have arisen from the operation, maintenance, or use of an uninsured motor vehicle

■ Chock first argues that the circuit court erred because HRS § 431:10C–301(b)(3) (1993 [1]) does not require his injuries to have arisen from the "ownership, operation, maintenance, or use" of an uninsured motor vehicle in order to be eligible for UM benefits. Although Glenn's and Lee's policies contained a provision requiring the injuries to have arisen from the ownership, maintenance, or use of a motor vehicle, Chock argues that this provision is void because it conflicts with the statute.

Chock is correct that HRS § 431:10C–301(b)(3) does not use the phrase "operation, maintenance or use" of a motor vehicle. HRS § 431:10C–301(b)(3) also does not use the word "accident," which is defined in HRS § 431:10C–103(9) (1993) ("Motor vehicle accident means an accident arising out of the operation, maintenance, or use of a motor vehicle, including an object drawn or propelled by a motor vehicle."). Chock is also correct when he quotes *State v. Villeza,* 85 Hawai'i 258, 273, 942 P.2d 522, 537 (1997), for the proposition that " '[w]here a statute with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed' " (quoting *State v. Rodgers,* 68 Haw. 438, 442, 718 P.2d 275, 277 (1986)). Therefore, Chock argues, the legislature's failure to include language in HRS § 431:10C–301(b)(3) referring to ownership, operation, maintenance, use, or accidents, while using that language in HRS §§ 431:10C–301(b)(1) (liability coverage for bodily injury) and (b)(2) (liability coverage for property damage), means that the legislature did not intend this to be a requirement to collect UM benefits; Chock concludes that inclusion of this provision in the insurance policy is void.

We disagree. First, the language of the statute itself contradicts Chock's argument.

HRS § 431:10C–301 provides in relevant part:

(b) A motor vehicle insurance policy shall include:

....

(3) ... liability coverage provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, *resulting therefrom* ....

HRS § 431:10C–301 (emphasis added). This language indicates that, in section 431:10C–301(b)(3), the legislature is still discussing injuries resulting from the use of motor vehicles even though not directly referring to the use of motor vehicles in this section.

Second, Chock's argument is undermined by the purpose of UM insurance. This court has previously discussed the purpose of UM statutes such as HRS § 431:10C–301(b)(3):

Their purpose is to provide a remedy where injury is caused by an uninsured motorist; or, as has been more frequently stated, to provide a remedy to the innocent victims of irresponsible motorists who may have no resources to satisfy the damages they cause. This recourse [ ] is provided, then, to cover the situation of a wrongful or tortious act of an uninsured motorist or a hit and run driver, or that of another unknown motorist.

... *Ideally, the purpose is to place those insured in the same position they would have occupied had the tortfeasor carried liability insurance* ....

8C Appleman § 5067.45, at 41–46 (1981) (footnotes omitted). *Dawes v. First Ins. Co. of Hawai'i Ltd.,* 77 Hawai'i 117, 123, 883 P.2d 38, 44 (1994) (footnote omitted) (emphasis added) (brackets and ellipses in original). *See also State Farm Mut. Auto. Ins. Co. v. Gepaya,* 80 P.3d 321 (Haw.2003) (quoting same). The legislature did not intend UM benefits to be general tort insurance. If Chock were correct, then a victim of *any* tort

---

1. Although this portion of the statute also appears in the 2002 Supplement, this section has remained unchanged since at least 1993.

would be able to receive UM benefits if the tortfeasor did not have automobile insurance; however, if that tortfeasor had automobile insurance, then the tort victim would not be able to receive UM benefits. We do not believe that the legislature intended that victims of torts would be able to recover UM benefits when such tort had nothing to do with automobiles, nor that a victim would recover more if fortunate enough to have been harmed by someone who did not have automobile insurance. Therefore, we hold that the GEICO contract provision is valid, such that Chock must demonstrate that his injuries arose from the operation, maintenance, or use of an uninsured motor vehicle in order to recover UM benefits.[2]

### 2. Whether Chock's injuries arose from the operation, maintenance, or use of an uninsured motor vehicle

■ Chock argues that if the operation, maintenance, or use provision does apply, then his injuries satisfy this provision. Chock notes that "[o]peration, maintenance or use" is defined in HRS § 431:10C–103(13) (1993) to include "occupying, entering into and alighting from" the vehicle. Since Hunt was occupying his vehicle at the time he shot Chock, and since Hunt braced himself on the window as he shot Chock, Chock argues that the shooting constitutes "use" of the vehicle.

In *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 851 P.2d 321 (1993), this court utilized the three-part test articulated in *Continental Western Ins. Co. v. Klug,* 415 N.W.2d 876, 877–79 (Minn.1987), in analyzing whether an individual's death arose from the "use" of a motor vehicle. *Estate of Caraang,* 74 Haw. at 640–41, 851 P.2d at 330–31. In *Estate of Caraang,* the passenger of one vehicle (Vehicle # 1) shot and killed the driver of another vehicle (Vehicle # 2) while both vehicles were moving. *Id.* at 624–25, 851 P.2d at 324. The victim (driving Vehicle # 2) had seen Vehicle # 1 and had chased Vehicle # 1 for several miles before the shooting took place; the driver of Vehicle # 1 tried to evade Vehicle # 2, but could not because of traffic congestion. *Id.* at 624–25, 851 P.2d at 324. Applying the three-part *Klug* test, we held that the insurer for Vehicle # 1 had a duty to defend and indemnify the insured driver of Vehicle # 1 against a suit by the estate of the deceased driver of Vehicle # 2. *Id.* at 623, 640–41, 851 P.2d at 323–24, 330–31. We held that the victim's death arose from "use" of a motor vehicle because "(1) the extent of causation between the truck and the death rendered the truck an 'active accessory'; (2) no act of independent significance occurred such as to break the causal link; and (3) the death resulted from the use of the truck for transportation purposes." *Id.*

Applying the *Klug* test to the facts of this case, we hold that Chock's injuries did not arise from the operation, maintenance, or use of a motor vehicle. The first factor, whether the uninsured motor vehicle was an active accessory in causing plaintiff's injuries, weighs against Chock. Although Hunt used his car to drive to the parking lot near the Wilson Tunnel, and although Hunt leaned on his vehicle's window while shooting Chock, Hunt's vehicle was not moving at the time of the shooting. Hunt could have inflicted these injuries on Chock without the use of a motor vehicle, such that the vehicle does not seem to be an active accessory in this case.

The second factor, whether there was an independent act breaking the causal link between "use" of the vehicle and the injuries inflicted, also weighs against Chock. This court has noted that "an intentional act does not necessarily sever bodily injury caused thereby from the 'use' of an insured vehicle." *Id.* at 639, 851 P.2d at 330. In *Estate of Caraang,* we held that no act of independent significance existed to break the causal link between use of the vehicle and the injuries inflicted. *Id.* at 640–41, 851 P.2d at 331. In *Estate of Caraang,* both vehicles were moving at the time of the shooting. *Id.* at 624–25, 851 P.2d at 324. In contrast, both Hunt's and Chock's vehicles were parked at the time Hunt shot Chock. Although Hunt drove his car to meet Chock and braced himself on his

---

2. The "ownership" provision does not apply because Chock did not own Lee's or Glenn's automobiles, the insured vehicles.

car window while shooting Chock, Hunt's parking his car and then shooting Chock were independent acts breaking the causal link. *See also Holm v. Mutual Service Cas. Ins. Co.*, 261 N.W.2d 598, 603 (1977) (discussing prior case law and noting that "[i]n each of these decisions[,] the acts of leaving the vehicle and inflicting a battery were viewed as events of independent significance which broke the causal link between the 'use' of the vehicle and the injuries inflicted ... in spite of the fact that in each instance the subject auto was used to transport the tortfeasor(s) to the scene of the incident"). Therefore, the second *Klug* factor weighs against Chock.

The third factor, whether the injuries resulted from use of the vehicle for transportation purposes, also weighs against Chock. Again, both Hunt and Chock had used their vehicles to arrive at the parking lot, but Hunt's vehicle was not an instrumentality in causing Chock's injuries. At the time of the shooting, the cars were not being used for transportation purposes, but rather were parked adjacent to the Wilson Tunnel.

Therefore, Chock's injuries did not arise from the operation, maintenance, or use of a motor vehicle. Although intentional acts do not necessarily preclude recovery of UM benefits, the circumstances of this case are such that Chock's injuries did not arise from the operation or use of a motor vehicle; as a result, we hold that the circuit court correctly ruled that Chock is not entitled to UM benefits.

### B. *Attorneys' Fees*

■ The circuit court erred in awarding attorneys' fees to GEICO pursuant to HRS

3. HRS § 607–14 provides in relevant part:

> **Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable....

4. HRCP Rule 54 provides in relevant part:

> (d) *Costs*. Except when express provision therefor is made either in a statute or in these

§ 607–14 (Supp.1998)[3] in this declaratory judgment consolidated action. The relief sought by Chock and GEICO was a declaration as to the applicability of insurance coverage for Chock's injuries, not money damages. As we have previously held, "[w]hen the recovery of money damages is not the basis of a claim factually implicating a contract, the action is not 'in the nature of assumpsit.' " *Leslie v. Estate of Tavares*, 93 Hawai'i 1, 7, 994 P.2d 1047, 1053 (2000). An action that seeks only a declaration as to a party's rights or responsibilities, even if factually implicating a contract, is not "in the nature of assumpsit." Therefore, GEICO cannot recover attorneys' fees from Chock because HRS § 607–14 does not provide for attorneys' fees in declaratory judgment actions.

### C. *Costs To GEICO*

■ The circuit court did not err in awarding costs to GEICO pursuant to HRCP Rule 54(d) (2000).[4] GEICO was the prevailing party in this litigation, and HRCP Rule 54(d) provides that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs."

Chock argues that HRS § 431:10–242 (1993)[5] prevents the award of costs to GEICO. He notes that in a case where an insurer contests liability, the legislature has provided for the award of costs and fees to a prevailing insured but not a prevailing insurer. Chock contends that because the legislature did not provide for the award of costs or fees to a prevailing insurer, the legislature intended that a prevailing insurer should not be able to recover costs or fees. Because

> rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs....

5. HRS § 431:10–242 provides:

> **Policyholder and other suits against insurer.** Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder, the beneficiary under a policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy shall be awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy.

both Rule 54(d) and HRS § 431:10–242 concern costs, Chock argues, and because HRS § 431:10–242 is the more specific statute, HRS § 432:10–242 should be favored over Rule 54(d).

Chock's argument is inapposite because there is no direct conflict between HRCP Rule 54(d) and HRS § 431:10–242. In *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994), this court reiterated the general rule that laws *in pari materia* should be construed in reference to one another. We explained that "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, *effect will be given to both if possible,* as repeal by implication is disfavored." *Id.* (emphasis added) (citations and internal quotation signals omitted). This court can give effect to both HRCP Rule 54(d) and HRS § 431:10–242 by upholding the circuit court's award of costs to GEICO: the award of costs does not violate HRS § 431:10–242 and is consistent with HRCP Rule 54(d). Therefore, the circuit court correctly awarded costs to GEICO.

D. *Remaining Issues On Appeal*

Chock argues that the circuit court erred in concluding that the GEICO policies were void or voidable and in ruling that Glenn knowingly selected non-stacked UM coverage. On cross-appeal, GEICO argues that the circuit court erred in concluding that Chock's injuries were caused by accident. In light of our holding that Chock is not entitled to UM benefits, these arguments are moot.

IV. *CONCLUSION*

Based on the foregoing, we vacate the portion of the circuit court's April 7, 2000 judgment awarding GEICO attorneys' fees pursuant to HRS § 607–14 and affirm in all other respects.