126 P.3d 1086

**In the Interest of John DOE, Born on July 3, 1995, John Doe, Born on October 18, 1996.**

**No. 27115.**

Supreme Court of Hawai'i.

Jan. 26, 2006.

As Corrected Jan. 27, 2006.

Maile Shimabukuro, M. Nalani Fujimori (Legal Aid Society of Hawai'i); Derek R. Kobayashi, and Mihoko E. Ito (Goodsill Anderson Quinn & Stifel), on the briefs, Honolulu, for Father–Appellant and Mother–Appellant.

Kevin S. Adaniya, on the briefs, for Permanent Custodian–Appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

1. The Honorable Marilyn Carlsmith presided.

2. The relevant provisions of section 587–2 of the Hawai'i Revised Statutes are discussed and produced *infra*.

3. The relevant provision of Hawai'i Family Court Rules (HFCR) Rule 24 is reproduced *infra*.

4. In addition to John Doe 1 and John Doe 2, Mother has three other children, J.A.Q., M.J.Q., and T.A.B.

5. HRS § 587–21 provides, in pertinent part, the preliminary measures the DHS shall take in order to protect persons below the age of eighteen:

    (a) *Upon receiving a report that a child is subject to imminent harm, has been harmed, or is subject to threatened harm, the department*

Opinion of the Court by ACOBA, J.

We hold in this appeal by Father–Appellant (Father) and Mother–Appellant (Mother) [collectively Appellants] from the January 18, 2005 findings of fact, conclusions of law, and order denying Appellants' motion to intervene and further relief of the family court of the first circuit[1] (the court), and the January 18, 2005 order denying Appellants' motion for reconsideration, that because Appellants retained residual interests in the visitation of their minor children, (1) Appellants may seek judicial review of a decision by the children's permanent custodian, Thomas A.K. Haia, Esq., (Appellee) to deny them visitation, (2) Section 587–2[2] of the Hawai'i Revised Statutes (HRS) and Rule 24(a)[3] of the Hawai'i Family Court Rules (HFCR) are not in conflict with regard to the subject of visitation during the time permanent custody is in effect, and (3) it was an abuse of discretion for the court to deny Appellants' motion to intervene. We therefore vacate the aforesaid orders and remand for further proceedings in accordance with this opinion.

I.

On October 28, 1999, the Department of Human Services (DHS) filed a Petition for Family Supervision with the court over Appellants' minor children, John Doe 1, born on July 3, 1995, and John Doe 2, born October 18, 1996 [collectively, the children],[4] pursuant to HRS § 587–21 (1993 & Supp.2004)[5] and

*shall cause such investigation to be made as it deems to be appropriate. ...*

    . . . .

    (b) Upon satisfying itself as to the course of action which should be pursued to best accord with the purpose of this chapter, the department shall:

    (1) Resolve the matter in such informal fashion appropriate under the circumstances;

    (2) *Seek to enter into a service plan, without filing a petition in court, with members of the child's family and other authorized agency as the department deems necessary to the success of the service plan,* including but not limited to, the member or members of the child's family who have legal custody of the child. *The service plan may include an agreement with the child's family to voluntarily place the child in the foster custody of the department or other authorized agency, or to place*

HRS § 587–2 (1993 & Supp.2004).[6]

On October 29, 1999, the children were taken into police protective custody,[7] released to DHS, and placed in a foster home.

On November 3, 1999, DHS filed an Amended Petition for Temporary Foster Custody of the children. A service plan was proposed to the court pursuant to HRS § 587–26 (1993).[8] On the same date, Appellee was appointed guardian ad litem [9] (GAL) for the children. On November 23, 1999, the court awarded DHS foster custody [10] over the children.

From December 17, 1999 to May 17, 2001, seven review hearings were held and, in each instance, foster custody to DHS was retained.

On June 8, 2001, the children were returned to Appellants' care under family supervision. On August 8, 2001, the court ordered continuation of family supervision.

On September 21, 2001, the children were removed from Appellants' care by DHS and placed in foster custody after (1) Appellants failed to provide the children with treatment, (2) the children were found to have been

---

the child and the necessary members of the child's family under the family supervision of the department or other authorized agency; provided that if a service plan is not successfully completed within six months, the department shall file a petition or ensure that a petition is filed by another appropriate authorized agency in court under this chapter and the case shall be reviewed as is required by federal law;

(3) *Assume temporary foster custody of the child pursuant to section 587–24(a)* and file a petition with the court under this chapter within three working days, excluding Saturdays, Sundays, and holidays, after the date of the department's assumption of temporary foster custody of the child[.]

(Emphases added.)

"Family" is defined by HRS § 587–2 (1993) as each legal parent, the natural mother, the natural father, the adjudicated, presumed, or concerned natural father as defined under section 578–2, each parent's spouse, or former spouses, each sibling or person related by consanguinity or marriage, each person residing in the same dwelling unit, and any other person who or legal entity which is a child's legal or physical custodian or guardian, or who is otherwise responsible for the child's care, other than an authorized agency which assumes such a legal status or relationship with the child under this chapter.

6. HRS § 587–2 (1993) provides an authorized agency the following duties and rights upon creation of "family supervision" status under HRS § 587–21(b)(2):

(1) *To monitor and supervise the child and the child's family members who are parties, including, but not limited to, reasonable access to each of the family members who are parties, and into the child's family home;* and

(2) *To have authority to place the child in foster care and thereby automatically assume temporary foster custody or foster custody of the child. ...*

(Emphases added.)

7. HRS § 587–2 (1993) defines "protective custody" as "the legal status of a child whose physical custody is retained by a police officer under this chapter in order to protect such child from imminent harm."

8. HRS §§ 587–26(a) & (b) provide the definition and scope of a service plan:

(a) A service plan is a specific written plan prepared by an authorized agency and child's family presented to such members of the child's family as the appropriate authorized agency deems to be necessary to the success of the plan, including, but not limited to, the member or members of the child's family who have legal custody, guardianship, or permanent custody of the child at the time that the service plan is being formulated or revised under this chapter.

(b) The service plan shall set forth:

(1) The steps that will be necessary to facilitate the return of the child to a safe family home, if the proposed placement of the child is in foster care under foster custody;

(2) The steps that will be necessary for the child to remain in a safe family home with the assistance of a service plan, if the proposed placement of the child is in a family home under family supervision; and

(3) The steps that will be necessary to make the family home a safe family home and to terminate the appropriate authorized agency's intervention into the family and eliminate, if possible, the necessity for the filing of a petition with the court under this chapter.

9. A "guardian ad litem" is defined as "a person appointed by the court under section 587–34 whose role is to protect and promote the needs and interests of the child or a party." HRS § 587–2 (1993).

10. "Foster custody," as referred to in HRS § 587–21(b), means "the legal status created [by HRS § 587–21(b)(2) ], or by an order of court after the court has determined that the child's family is not willing and able to provide the child with a safe family home, even with the assistance of a service plan." HRS § 587–2 (1993).

emotionally, physically, and psychologically harmed since their return to Appellants' care, and (3) Appellants failed to obtain proper medical care for the children's half-sister who was injured by a pick axe.

On November 6, 2001, DHS filed a Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan pursuant to HRS § 587-2.[11] Permanent plan hearings were held on November 15 and 16, 2001.[12] On September 16, 2001, the court entered an Order Awarding Permanent Custody (permanent custody order) finding that, by "clear and convincing evidence," Appellants were not "presently willing and able to provide the child(ren) with a safe family home, even with the assistance of a service plan." The permanent custody order (1) divested Appellants of their parental rights pursuant to HRS §§ 587-2 and 587-73 (1993 & Supp.1999), (2)

appointed the DHS Director as permanent custodian of the children with the duties and rights set forth under HRS § 587-2 and as stated in the Letters of Permanent Custody, (3) excluded Appellants, pursuant to HRS § 587-73(b)(4) (1993),[13] "from participating in adoption or other subsequent proceedings," (4) provided that Appellants would not be given notice of future hearings, and (5) excluded Appellants from future hearings unless Appellants receive further legal notice requiring their appearance.

In support of the permanent custody order, the court made the following findings of fact:

A. The child(ren)'s legal mother, legal father, adjudicated, presumed or concerned father as defined under HRS Chapter 578 are not presently willing and able

**11.** Under HRS § 587-2, "permanent custody" provides a permanent custodian several rights and duties previously reserved for legal custodians and family members:

"Permanent custody" means the legal status created under this chapter by order of the court after the court has considered the criteria set forth in section 587-73(a) or (e) and determined by clear and convincing evidence that it is in the best interests of the child to order a permanent plan concerning the child.
(1) *Permanent custody divests from each legal custodian and family member who has been summoned pursuant to section 587-32(a), and vests in a permanent custodian, each of the parental and custodial duties and rights of a legal custodian and family member, including, but not limited to, the following:*
(A) To determine where and with whom the child shall live; provided that the child shall not be placed outside the State without prior order of the court;
(B) To assure that the child is provided in a timely manner with adequate food, clothing, shelter, psychological care, physical care, medical care, supervision, and other necessities;
(C) To monitor the provision to the child of appropriate education;
(D) *To provide all consents that are required for the child's physical or psychological health or welfare, including, but not limited to, medical, dental, psychiatric, psychological, educational, employment, recreational, or social needs;* and to provide all consents for any other medical or psychological care or treatment, including, but not limited to, surgery;
(E) To provide consent to adoption, change of name pursuant to section 574-5, or to marriage;

(F) To provide the court with information concerning the child that the court may require at any time, and to submit written reports to the court stating the then-current situation and other significant information concerning the child at intervals not to exceed one year, unless otherwise ordered by the court; and
(G) If the child resides without the home of the permanent custodian for a period of seven consecutive days, to submit a written report to the court stating the then-current situation of the child on or before the tenth consecutive day or the next working day after the date[.]

**12.** This court has previously said that the primary purpose of a permanent plan hearing is as follows:

[T]he focus of a permanent plan hearing conducted pursuant to HRS § 587-73(a) is whether the child's "mother" or "father" can provide a safe family home. If not, the focus shifts to whether it is reasonably foreseeable that the child's "mother" or "father" will become willing and able to provide a safe family home within a reasonable period of time. Only after the family court has found, by clear and convincing evidence, that neither criteria has been established, does the court then consider whether the proposed goal of the permanent plan is in the best interests of the child. *In re Doe*, 95 Hawai'i 183, 194, 20 P.3d 616, 627 (2001) (internal citations omitted).

**13.** HRS § 587-73(b)(4) (1993) sets forth the authority for the court to issue further orders which it deems to be "in the best interests of the child including, but not limited to, restricting or excluding unnecessary parties from participating in adoption or other subsequent proceedings[.]"

to provide the child(ren) with a safe family home, even with the assistance of a service plan;

B. It is not reasonably foreseeable that the child(ren)'s legal mother, legal father, adjudicated, presumed or concerned father as defined under HRS Chapter 578 will become willing and able to provide the child(ren) with a safe family home, even with the assistance of a service plan, within a reasonable period of time;

C. *The proposed permanent plan attached hereto as Exhibit "A" is in the best interest of the child(ren);*

(Emphasis added.)

As indicated, the permanent custody order incorporated a Permanent Plan, marked Exhibit "A", dated November 5, 2001. Under section III of the permanent plan, Objectives Prior to Adoption [or] Guardianship, subsection E provided that the birth family objective was to "[m]aintain the sibling relationships between T.A.B., J.A.Q., M.J.Q., [the children], and their birth parents."

With respect to visitation, the court ordered the Letters of Permanent Custody dated November 16, 2001, to take effect. The Letters sets forth that

[a] family member may be permitted visitation with the child(ren) at the discretion of the permanent custodian/s; *provided that the exercise of such discretion may be reviewed by the [c]ourt and the [c]ourt may order that a family member be permitted such visitation as is in the best interest of the child(ren).*

(Emphasis added).

On November 28, 2001, each Appellant filed a motion for reconsideration. Both motions were denied on December 7, 2001. Subsequently, on December 21, 2001, Mother filed a Notice of Appeal, and on December 31, 2001, Father likewise filed a Notice of Appeal. On February 12, 2003, this court affirmed by summary disposition order the court's November 16, 2001 order awarding permanent custody and the December 7, 2001 order denying reconsideration. *In re Doe Children*, 101 Hawai'i 96, 63 P.3d 404 (2003).

On January 4, 2002, Appellee withdrew as the children's GAL and was subsequently appointed as the DHS-licensed foster parent on or about January 6, 2002. On February 1, 2002, Leland Look was appointed as the substitute GAL for the children.

Pursuant to HRS § 587-73, a permanent plan review hearing[14] was held on April 25, 2002. Permanent custody was continued in DHS and a revised permanent plan dated April 22, 2002 was ordered by the court. The language of Section III.E. of that plan contained identical language to the permanent plan dated November 5, 2001 with re-

---

14. A "permanent plan review hearing" is defined as "any hearing, subsequent to a court ordered permanent plan, held pursuant to section 587-73(b)." HRS § 587-2 (1993).

HRS § 587-73(b) (1993) provides the court with the authority to enter orders pursuant to a permanent plan review hearing including:

(3) That an appropriate permanent plan be implemented concerning the child whereby the child will:

(A) Be adopted pursuant to chapter 578; provided that the court shall presume that it is in the best interests of the child to be adopted, unless the child is or will be in the home of family or a person who has become as family and who for good cause is unwilling or unable to adopt the child but is committed to and is capable of being the child's guardian or permanent custodian;

(B) Be placed under guardianship pursuant to chapter 560; or

(C) Remain in permanent custody until the child is subsequently adopted, placed under a guardianship, or reaches the age of majority, and that such status shall not be subject to modification or revocation except upon a showing of extraordinary circumstances to the court;

(4) *That such further orders as the court deems to be in the best interests of the child, including, but not limited to, restricting or excluding unnecessary parties from participating in adoption or other subsequent proceedings, be entered;* and

(5) Until adoption or guardianship is ordered, that each case be set for a permanent plan review hearing not later than one year after the date that a permanent plan is ordered by the court, or sooner if required by federal law, and thereafter, that subsequent permanent plan review hearings be set not later than each year, or sooner if required by federal law; *provided that at each permanent plan review hearing, the court shall review the existing permanent plan and enter such further orders as are deemed to be in the best interests of the child.*

(Emphases added.)

spect to birth family relationships, stating the objective to be to "[m]aintain the sibling relationships between [the children and their siblings] and their birth parents." The order further provided that "[a]ll prior consistent orders shall remain in full force and effect until further order of the [c]ourt."

On June 25, 2002, Father filed a Motion for Immediate Review for Post Decree Relief requesting a new permanent custody trial. The motion was denied on June 28, 2002.

On October 11, 2002, following a permanent plan review hearing, the court continued permanent custody in DHS and the permanent plan dated October 7, 2002 was ordered. With respect to birth family relationships, the DHS did not recommend any visits between the children and their siblings and stated that they "would not recommend visits between the children and their parents because permanent custody was awarded and visits would only confuse and upset the children." The order provided identical language insofar as the effect of prior consistent orders are concerned.

At the permanent plan review hearing on March 21, 2003, permanent custody was continued in DHS and DHS's permanent plan dated March 11, 2003 was ordered. This time a different objective was set with respect to birth family relationships. The new objective was to "[m]aintain the relationship between [the children] and their birth family as assessed and deemed in their best interest by DHS, in consultation with the GAL." The permanent plan further noted under this objective that "it appears that [the children] really miss their mother, as they become tearful and upset when she is discussed or issues of adoption are brought up." Again, prior consistent orders remained in full force and effect.

At the permanent plan review hearing on September 5, 2003, permanent custody in DHS was continued and DHS's permanent plan dated August 22, 2003 was ordered.

With regard to birth family visitation, the permanent plan contained identical language as the previous, March 11, 2003 permanent plan, stating as its objective, "[maintenance of] the relationship between [the children] and their birth family as assessed and deemed in their best interest by DHS, in consultation with the GAL." Within this purpose, the permanent plan noted that "[the children] continue to miss their mother, although they do not talk about her as much as they used to."

On March 12, 2004, at a permanent plan review hearing, the court granted GAL's oral motion to "revoke" permanent custody in DHS and awarded permanent custody to Appellee.[15] In its findings, the court stated that Appellee "reported that he would follow the recommendations of the [children's] therapist regarding visits with parents whose parental rights were terminated, and upon hearing this DHS had no objection to GAL's motion." DHS was then dismissed as a party. The permanent plan "dated August 29, 2003" [sic] was ordered continued by the court. Prior consistent orders were also ordered to remain in full force and effect.

On March 30, 2004, an Amended Order Awarding Permanent Custody was filed and Amended Letters of Permanent Custody were issued. The Amended Letters of Permanent Custody contained identical language as the Letters of Permanent Custody dated November 16, 2001 with respect to birth family relationships, in that visitation by a family member was permitted at the permanent custodian's discretion subject to review by the court.

Sometime in December 2003, Appellants sought visitation with the children from Appellee but Appellee allegedly failed to respond. On May 10, 2004, Appellants filed a Motion to Enforce Permanent Plan seeking visitation and asserting that such visitation was mandated by the permanent plan dated

---

15. Appellants state that on June 4, 2004, the Honorable Frances Q.F. Wong, Senior Judge of the First Circuit Family Court, issued a memorandum stating that, "As a general rule, children under the court's jurisdiction pursuant to Chapters 571 and/or 587 shall not be placed with any judge, attorney, guardian ad litem, or court staff who have had direct involvement with the child and or the child's family." The memorandum provided that the general rule applied prospectively. Although Appellants mention this in their opening briefs, they do not directly challenge the appointment of Appellee as permanent custodian in this appeal.

November 5, 2001. In opposition to their motion, Appellee, through counsel, maintained that (1) Appellants lacked standing by virtue of the permanent custody order, which operated to terminate Appellants' status as parties, (2) Appellants could not, as a matter of law, move to enforce a previous permanent plan that had been superseded, and (3) visitation between Appellants and the children was not in the children's best interest. The court denied Appellants' motion on July 13, 2004, on the basis that Appellants lacked standing and party status.

At a permanent plan review hearing on August 18, 2004, permanent custody remained with Appellee and the Permanent Plan dated July 20, 2004 was ordered by the court. With regard to birth family relationships the plan stated that "[a]t the recommendation of the children's therapist, contact with the children's birth family is *not* recommended. Contact may be initiated at the discretion of the permanent custodian, in consultation with the children's [GAL], and therapist." (Emphasis in original.) The court did not issue any new Letters of Permanent Custody. Again, prior consistent orders were ordered to remain in full force and effect.

On September 17, 2004, Appellants filed a Motion to Intervene and for Further Relief. In support of their motion, Appellants asserted that "[w]hether visitation is in [the] children's best interest or whether there has been any abuse of discretion in approving or denying visitation is a question that can be fairly addressed only after allowing [Appellants] to intervene." Appellants urged the court, in its assessment of the propriety of visitation, to consider evidence of their respective psychological evaluations, the fact that the children have not been placed after permanent custody had been ordered, and the existence of strong ties between the children and their birth family. The court orally denied Appellants' motion on December 14, 2004.

Appellants filed a Motion for Reconsideration on January 3, 2005, followed by an Amended Motion for Reconsideration on January 14, 2005. Appellants alleged that "[i]t was improper for the court to deny their Motion to Intervene based on considerations regarding the best interest of the children since such considerations are premature." Appellants contended that the court should have first decided the question of intervention before deciding the merits of whether visitation was appropriate. Appellants further argued that it was improper for the court to consider the GAL's recommendations because he never met his wards, and to consider the children's therapist's declaration because it was based on outdated assessments. The court denied Appellants' amended motion for reconsideration on January 18, 2005, and entered its Findings of Fact, Conclusions of Law, and Order Denying Motion to Intervene and for Further Relief. The court's findings with regard to Appellants' motion to intervene and the issue of visitation stated as follows:

2. The Order Awarding Permanent Custody stated that "[p]ursuant to HRS 587–73(b)(4), [Appellants] are excluded from participating in adoption or other subsequent proceedings and he/she/they shall not be noticed of future hearings and he/she/they shall not appear at future hearings unless he/she/they receive further legal notice requiring such appearance."

3. In making its order awarding permanent custody, the [c]ourt found by clear and convincing evidence that [Appellants] were not presently willing and able to provide the subject children with a safe family home, even with the assistance of a service plan. The [c]ourt also found by clear and convincing evidence that it was not reasonably foreseeable that [Appellants] would become willing and able to provide the subject children with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

4. On December 7, 2001, [Appellants'] respective motions for reconsideration of the order awarding permanent custody were denied.

5. On February 12, 2003, the Hawaii Supreme Court affirmed the court's orders awarding permanent custody and denying motions for reconsideration.

. . . .

9. [HRS] Chapter 587 is to be liberally construed to serve the best interests of the children who have been harmed or have been threatened with harm.

10. The subject children were harmed and/or were threatened with harm by [Appellants]. As a result, these children became less likely than other children to realize their educational, vocational, and emotional potential, and become law-abiding, productive, self-sufficient citizens, and they became more likely to become involved with the mental health system, the juvenile justice system, or the criminal justice system, as well as become an economic burden on the State.

11. The subject children deserve and require competent, responsible parenting and a safe, secure, loving, and nurturing home.

12. There is no reasonable basis for determining that [Appellee] has failed to provide the subject children with competent, responsible parenting.

13. There is no reasonable basis for determining that [Appellee] has failed to provide the subject children with a safe, secure, loving, and nurturing home.

14. It is in the subject children's best interest that they be placed in a timely manner.

15. The issue of visitations between the subject children and their birth family rests within the sound discretion of [Appellee], the children's permanent custodian.

16. There is no reasonable basis for determining that [Appellee] has abused his discretion on the issue of visitations between the subject children and their birth family.

17. To permit [Appellants] to intervene in this matter and to litigate the issue of birth family visitations would not be in the subject children's best interest.

The court also concluded that, with respect to Appellants' Motion to Intervene, "[n]o good cause exists to support [Appellants'] Motion to Intervene and for Further Relief."

On February 9, 2005, Appellants filed their Notice of Appeal.

On March 18, 2005, the court, *sua sponte*, issued its Supplemental Findings of Fact; Conclusions of Law. With respect to the issue of visitation, the court's supplemental findings found:

2. The children are currently undergoing therapy to help them cope with the extensive issues resulting from the harm they suffered in the custody of [Appellants].

3. [Appellee] has repeatedly placed on the record his agreement with family visitation when the children's therapist advises it is in the children's best interest.

4. Currently the therapist has informed [Appellee] that it is not in the children's best interest to have family visitation until such time as the children are stabilized in their placement.

5. The [GAL], appointed to protect and promote the needs and interests of the children, agreed [that,] currently[,] visitation to the parents was not in his wards' best interest.

6. All reports and evidence reviewed over the interim indicate that the children are healthy and thriving, physically, emotionally, and academically in a loving and stable environment.

In addition, as to the issue of visitation, the court also entered the following supplemental conclusions of law:

1. Absent a showing of abuse of discretion by [Appellee] per HRS Section 587–2 "Permanent Custody" [subsection] (3)[,] the [c]ourt may refuse to review the exercise of that discretion.

2. A clear record that family visitation is currently not in the best interest of the children sustains this [c]ourt's declining to review the permanent custodian's denial of visitation.

3. No good cause exists to support [Appellants'] Motion to Intervene and for further relief.

## II.

On appeal, Appellants maintain the family court "denied Appellants due process and equal protection of the laws based on their constitutionally-protected liberty interest in

birth family visitation with the children[ ]" insofar as it (1) "den[ied] Appellants' Motion to Enforce the Permanent Plan[,]" (2) "den[ied] Appellants' Motion to Intervene[,]" (3) "den[ied] Appellants' Motion for Reconsideration of the Motion to Intervene[,]" (4) "conclud[ed] as a matter of law, that '[a] clear record that family visitation currently not in the best interest of the children sustains [the c]ourt's declining to review the permanent custodian's denial of visitation[,]' " (5) "den[ied] Appellants the right to intervene and yet [found] that '[t]o permit Appellants to intervene in this matter and to litigate the issue of birth family visitations would not be in the subject children's best interests[,]' " (brackets omitted) (6) "conclud[ed] as a matter of law that '[n]o good cause exists to support Appellants' Motion to Intervene and for Further Relief[,]' " (7) "den[ied] Appellants the right to intervene and yet conclud[ed] as a matter of law that[,] '[a]bsent a showing of abuse of discretion by the permanent custodian per HRS Section 587–2 "Permanent Custody" [subsection] (3)[,] . . . the [c]ourt may refuse to review the exercise of that discretion[,]' " (8) "conclud[ed] that '[i]t—it certainly would be, after permanent custody, ridiculous if parents could continue to come in and make motions for visitation, for sibling visitation, and for all other kinds of things that parents have when they haven't had their rights terminated.' " Appellants request that this court "reverse the [court's] decision" and they be "allow[ed] . . . to intervene . . . [to] seek appropriate visitation with their children and so that discretionary decisions made by the permanent

custodians that affect Appellants can be reviewed for abuse of discretion."

### III.

The standards of review applicable to this case are correctly set out by Appellants. A finding of fact "is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate [c]ourt is nonetheless left with a definite and firm conviction that a mistake has been made." *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citations omitted). " 'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *In re Doe*, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996) (citations omitted). An order denying an application for intervention by right under HFCR Rule 24(a)(2) is final and appealable and is reviewed under the right or wrong standard of review. "The interpretation of a statute . . . is a question of law reviewable *de novo*." *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (citations omitted).

### IV.

In his first argument, Appellee asserts that "Appellants never filed a motion for reconsideration [as to the motion to enforce the permanent plan] as required by HRS § 571–54 [ (1993),[16]] and Appellants

---

16. HRS § 571–54 entitled "Appeal," states in relevant part as follows:

An interested party aggrieved by any order or decree of the court may appeal to the supreme court for review of questions of law and fact. . . .

. . . .

An order or decree entered in a proceeding based upon section 571–11(1), (2), (6), or (9) shall be subject to appeal to the supreme court only as follows:

Within twenty days from the date of the entry of any such order or decree, any party directly affected thereby may file a motion for a reconsideration of the facts involved. The motion and any supporting affidavit shall set forth the grounds on which a reconsideration is requested and shall be sworn to by the movant or the movant's representative. The

judge shall hold a hearing on the motion, affording to all parties concerned the full right of representation by counsel and presentation of relevant evidence. The findings of the judge upon the hearing of the motion and the judge's determination and disposition of the case thereafter, and any decision, judgment, order, or decree affecting the child and entered as a result of the hearing on the motion shall be set forth in writing and signed by the judge. Any party deeming oneself aggrieved by any such findings, judgment, order, or decree shall have the right to appeal therefrom to the supreme court upon the same terms and conditions as in other cases in the circuit court and review shall be governed by chapter 602; provided that no such motion for reconsideration shall operate as a stay of any such findings, judgment, order, or decree unless the judge of the

completely failed to mention said order in their Notice of Appeal as required by Rule 3(c)(2) of the Hawai'i Rules of Appellate Procedure." In response, Appellants state that "[e]ven if the Family Court's Order was not attached" "to the Notice of Appeal," this "[c]ourt has broad latitude to consider an[d] overturn the Family Court's improper ruling," quoting *Correa v. Waiakea Mill Co.*, 30 Haw. 340, 343 (1928), for the proposition that " '[i]f for any reason that appears from the record and that is properly brought to our attention, the ruling upon which the judgment of this court is sought should be reversed, we would be remiss in our duty if we ignored it.' " Citing *Jordan v. Hamada,* 62 Haw. 444, 616 P.2d 1368 (1980), Appellants further note that this "[c]ourt has an express policy to liberally construe rules on appellate procedure."

This court has since held that "[b]y the plain language of [HRS § 571–54], a party desiring to appeal from an order entered in a proceeding governed by [the statute] is required to file a motion for reconsideration." *In re Doe Children,* 94 Hawai'i 485, 486, 17 P.3d 217, 218 (2001) (citation omitted). However, inasmuch as Appellants' motion to intervene meets the "requisite degree of finality of an appealable order," *In re Doe,* 96 Hawai'i 272, 283, 30 P.3d 878, 889 (2001), because the January 18, 2005 order finally decided the visitation rights of the birth parents, we have jurisdiction to review the denials of Appellants' motion to intervene and subsequent motion for reconsideration.

### V.

■ Inasmuch as we believe the constitutionally sound provisions of HRS chapter 587 are dispositive of the instant appeal, Appellants' arguments challenging the constitutionality of the court's orders fall of their own weight. *See In re Jane Doe,* 96 Hawai'i 73, 81, 26 P.3d 562, 570 (2001) (stating that, "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise, and by the other of which such questions are avoided,

family court so orders; provided further that no informality or technical irregularity in the proceedings prior to the hearing on the motion

our duty is adopt the latter"). When interpreting statutes, this court has previously held that "[t]he fundamental starting point is the language of the statute itself." *In re Doe,* 90 Hawai'i 246, 252, 978 P.2d 684, 690 (1999). Moreover, "where there is no ambiguity in the language of the statute, and the literal application of the language would not produce an absurd or unjust result clearly inconsistent with the purposes and policies of the statute, there is no room for judicial construction and interpretation, and the statute must be given effect according to its plain and obvious meaning." *Id.* at 253, 978 P.2d at 691.

### VI.

■ As previously mentioned, the provisions of HRS § 578–2 authorize a permanent custodian to exercise the rights and duties of legal custodians and family members whose rights have been judicially terminated. Under HRS § 587–73(b)(4), *see supra* note 14, the court is authorized to issue further orders "in the best interests of the child," including the power to bar "unnecessary parties from participating in adoption or other subsequent proceedings[.]"

However, HRS § 578–2 also defines, in pertinent part, the residual rights and obligations of legal custodians and family members at the time permanent custody is in effect, including the qualified right to visitation of children:

(2) Unless otherwise ordered by the court, a child's family member shall retain, to the extent that the family member possessed the responsibility prior to the transfer of permanent custody, the continuing responsibility for support of the child, including, but not limited to, repayment for the cost of any and all care, treatment, or any other service supplied or provided by the permanent custodian, any subsequent permanent custodian, other authorized agency, or the court for the child's benefit;

for reconsideration shall constitute grounds for the reversal of any such findings, judgment, order, or decree by the appellate court.

(3) *A family member may be permitted visitation with the child at the discretion of the permanent custodian; provided that the exercise of such discretion may be reviewed by the court and the court may order that a family member be permitted such visitation as is in the best interests of the child;*

(4) An order of permanent custody entered under this chapter shall not operate to terminate the mutual rights of inheritance of the child and the child's family members or any other benefit to which the child may be entitled, unless and until the child has been legally adopted[.]

(Emphasis added.)

In its permanent custody order, the court specified that Appellants' parental rights were divested pursuant to HRS §§ 587–2 and 587–73. The permanent custody order granted the permanent custodian "each of the parental and custodial rights as are set forth in HRS 587–2," until the children reached the age of eighteen or were adopted, prohibited Appellants from receiving notice of, and participating in, adoption or other subsequent proceedings, and excluded Appellants from future hearings unless required by the court. The court further ordered implementation of Letters of Permanent Custody which provided that visitation by Appellants is at the discretion of the permanent custodian, subject to review by the court. The Letters, as noted before, was subsequently superseded by the Amended Letters of Permanent Custody containing the same language.

In their opening brief, Appellants cite HFCR Rule 24(a) in support of their position that Appellants should have been allowed to intervene in order to protect their right to birth family visitation. HFCR Rule 24(a) states:

(a) *Intervention of right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property, transaction or custody or visitation of a minor child which is the subject of the action and the appli-cant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Appellants argue that any apparent conflict between HRS § 587–2 and Rule 24(a) must be construed to avoid inconsistency, contradiction, and illogical outcome.

Although Appellants do not specify how these provisions are to be construed, they assert that "[t]he correct interpretation and only logical outcome is that Appellants should have been allowed to intervene." On the other hand, Appellee maintains that "Rule 24(a) seems to mandate allowing Appellants to intervene and an opportunity to litigate the visitation issue.... [W]hen a statute[, *i.e.*, HRS § 587–2,] and a rule conflict, the statute prevails. *In re Doe Children*, 94 Hawai'i [at] 486, 17 P.3d [at] 218[.]" Thus, Appellee argues, "the [c]ourt's actions were ... proper."

## VII.

In interpreting a court rule in comparison with a statute, this court has said:

[L]aws *in pari materia* should be construed in reference to one another.... "[W]here there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, *effect will be given to both if possible*, as repeal by implication is disfavored."

*Chock v. Gov't Employees Ins. Co.*, 103 Hawai'i 263, 269, 81 P.3d 1178, 1184 (2003) (quoting *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994)) (emphasis in original). But it does not appear that a "plainly irreconcilable conflict" between HRS § 587–2 and HFCR Rule 24 exists.

The parties do not dispute that both provisions pertain to the same subject matter, *i.e.*, visitation. HRS § 587–2 specifically provides that visitation is within the discretion of the permanent custodian subject to discre-

tionary review by the court of the custodian's grant or denial of visitation. On the other hand, HFCR Rule 24 is generally worded to mandate intervention when an applicant meets four elements, namely (1) the application to intervene is timely, (2) the applicant claims an interest relating to the property, transaction or custody or visitation of a minor child which is the subject of the action, (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and (4) the applicant's interest is represented inadequately by the existing parties to the suit. HFCR Rule 24.

Appellants correctly maintain that they retain specific residual interests under HRS § 587-2. Under HRS § 587-2, permanent custody does not completely divest family members of their rights and interests. Appellants were legally bound to continuing responsibility for support of the children, and the children retain the right to inherit from birth family members. HRS § 587-2. By the terms of HRS § 587-2, such rights and interests terminate on the condition the children are adopted or reach the age of eighteen. Here, the children have not been adopted or attained adult status. Because the court is empowered to enter further orders it deems to be in the best interest of the children, such orders may recognize residual interests in the birth parents.

Appellants' interests in visitation was acknowledged in the Amended Letters of Permanent Custody, stating that visitation was permissible, and was consistent with the July 20, 2004 permanent plan that "[c]ontact may be initiated" at Appellee's discretion, in consultation with the children's GAL and therapist. Thus, Appellants maintain that they should be granted intervenor status because "[i]ntervention pursuant to Rule 24(a) was the appropriate procedural vehicle to afford a hearing to enforce their visitation rights[.]" Although Appellants appear to mistakenly argue that the right of visitation is absolute, the language of the HRS § 587-2 and the permanent custody documents preserve an interest in visitation in the Appellants. To reiterate, HRS § 587-2 and the March 30, 2004 Amended Letters of Permanent Custody provide that "a family member may be permitted visitation with the children at the discretion of the permanent custodian[.]" Although Appellee is given the discretion to grant or deny visitation, such discretion must be exercised in a manner consistent with the best interests of the children. *See* HRS § 587-1 (Supp.2004) (stating that chapter 587 "shall be liberally construed to serve the best interests of the children and the purposes set out in this chapter").

Because Appellants' interest in visitation is directly affected by Appellee's decision, Appellants must be given the opportunity to protect that interest.[17] Under the circumstances of this case, intervention is the sole vehicle for Appellants to seek judicial review of whether Appellee abused his discretion in denying visitation. For following termination of parental rights by permanent custody, Appellants are "so situated that the disposition of the action[, *i.e.*, denial of visitation,] may as a practical matter impair or impede [their] ability to protect that interest." HFCR Rule 24. Where the provisions of HRS § 587-2 and HFCR Rule 24 "simply overlap," *Chock*, 103 Hawai'i at 269, 81 P.3d at 1184, effect may be given to both. Hence, intervention in this case must be granted.

### VIII.

Although the court decided to deny Appellants' motion to intervene, it proceeded to adjudicate whether Appellee abused his discretion in denying Appellants' requests to visit the children. In the main, the

> family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party

17. We need not decide, in this appeal, the frequency with which Appellants may seek review of Appellee's denial of visitation inasmuch as no objection is raised on this ground to Appellants' intervention motion. Such an issue would seem resolvable on a case by case basis dependent on specific and particular facts.

litigant ... [and its] decision clearly exceed[ed] the bounds of reason.

*In re Doe,* 95 Hawai'i 183, 189–90, 20 P.3d 616, 622–23 (2001) (internal quotation marks and citation omitted) (brackets in original).

However, in light of HRS § 587-2 and the August 23, 2003 permanent plan objective to "[m]aintain the relationship between [the children] and their birth family," and the express provisions of the March 30, 2004 Amended Letters of Permanent Custody, Appellants correctly contend that the court should have granted Appellants leave to intervene, before deciding on the merits of whether visitation was consistent with the best interests of the children.

Where the best interests of a child is of paramount importance, consideration of all relevant evidence becomes a critical duty of the court in making a decision regarding custody and visitation. *See, e.g., In re D.L., A.L.,* 166 N.C.App. 574, 603 S.E.2d 376, 382 (2004) (stating that "[w]henever the trial court is determining the best interest of a child, *any evidence* which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court" (emphasis in original)); *In re Thornton,* 24 Ohio App.3d 152, 493 N.E.2d 977, 980 (1985) (holding that, in a grandparent visitation case, failure of the trial court to fully adduce all relevant evidence on the visitation issue and thereby make a determination that visitation is in the child's best interests is error); *cf. Doe v. Doe,* 98 Hawai'i 144, 152, 44 P.3d 1085, 1093 (2002) (opining that "the court's administrative interest in enforcing the limits on trials should not supersede the court's obligation to consider relevant evidence to determine the best interests of the child in a custody hearing"); *Sabol v. Sabol,* 2 Haw.App. 24, 27, 624 P.2d 1378, 1382 (1981) (holding in custody case that "if [courts] limit the inquiry only to such legally competent evidence as the parties are able to and choose to present, then the award will be determined more on a comparison of the presentations than on the best interests of the child"). As such, it was an abuse of discretion for the court to deny Appellants the opportunity to present evidence to show that visitation was in the best interest of the children and, on remand, Appellants must be given that opportunity.

## IX.

Therefore, (1) the court's January 18, 2005 findings of fact, conclusions of law, and order denying motion to intervene and for further relief and (2) January 18, 2005 orders concerning child protective act denying Appellants' motion for reconsideration are hereby vacated, and the case remanded for further proceedings in accordance with this opinion.