NATIONAL UNION FIRE INSURANCE COMPANY of Pittsburgh, Pennsylvania, Plaintiff-Appellant, *v.* RICHARD OLSON, Defendant-Appellee (U.S.D.C. No. C-83-1275-RPA Hawaii (Honolulu) )

NO. 12121

(NINTH CIRCUIT NO. 85-1943)

MARCH 21, 1988

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

The Ninth Circuit Court of Appeals certifies three questions to this court pursuant to Hawaii Rule of Appellate Procedure 13. Our opinion is based upon the following certified facts.

## I.

For the period from July 1, 1982 to July 1, 1983, National Union issued an automobile liability insurance policy to named insured, International Life Support, Inc. & ILS Associates, Inc. and Nevada Emergency Services. Included in that policy was an uninsured motorists endorsement, which stated in relevant part:

A. WE WILL PAY
  1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. * * *
D. WHO IS INSURED
  1. You or any family member.
  2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. * * *

"You" is defined in the definitions section for the entire policy:

The following words and phrases have special meaning throughout this policy and appear in boldface type when used:

A. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

"Occupying" is defined in the uninsured motorist endorsement:

A. 2. "Occupying" means in, upon, getting in, on, out or off.

On February 14, 1983, Richard Olson and Thomas Jones were working for International Life Support. Olson was the emergency medical technician (EMT) and Jones the mobile intensive care technician (MICT) that made up the ambulance crew. (An EMT is trained in basic life support care while the MICT is qualified to do more advanced life support, such as administering drugs. The MICT is the senior member of the crew and responsible for the functioning of the unit.)

Also present that night was Paula Black, an unemployed EMT riding along in the ambulance for additional experience.

The three responded together to an automobile accident call. A motorcycle lay partially in the roadway. A man with a small flashlight was attempting to direct traffic. The police had not yet arrived. Olson was instructed by Jones to set flares on the roadway.

Olson went to the rear of the ambulance where flares are kept and removed one. Olson then walked to the center of the road to place a flare.

While in the roadway attempting to light the flare, Olson was struck and injured by an uninsured motor vehicle, driven by uninsured motorist Steven J. O'Donahue.

## II.

The certified questions are framed to include both the uninsured motorist statute, Hawaii Revised Statutes (HRS) § 431-448, and the no-fault statute, Part I of HRS Chapter 294.

The questions set forth by the Ninth Circuit read as follows:

I.  Can uninsured motorists' coverage be restricted consistently with Sections 431-448,[1] 294-2(12),[2] 294-8(a)[3] and

---

[1] HRS § 431-448 (1978) reads as follows:

Automobile liability; coverage for damage by uninsured or underinsured motor vehicle. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law *for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle,* shall be delivered, issued for delivery, or renewed in this State, with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided that the coverage required under this section shall not apply where any insured named in the policy shall reject the coverage in writing. (Emphasis added.)

[2] HRS § 294-2(12) reads as follows:

*"Operation, maintenance, or use"* when used with respect to a motor vehicle *includes occupying, entering into and alighting from it* but does not include conduct in the course of loading or unloading the vehicle unless the accidental harm occurs in the immediate proximity of the vehicle, and does not include conduct within the course of a business of repairing, servicing, or otherwise maintaining vehicles unless the conduct occurs outside the premises of such business. (Emphasis added.)

[3] HRS § 294-8(a) reads as follows:

Conditions of operation and registration. (a)(1) No person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a no-fault policy.

294-10(a)[4] of the Hawaii Revised Statutes, to persons "occupying" a covered vehicle?

II. If uninsured motorists' coverage may be restricted to those "occupying" a covered vehicle, what is the proper definition of "occupying" consistent with Sections 431-448, 294-2(12), 294-8(a) and 294-10(a) of the Hawaii Revised Statutes, and the common law of Hawaii?

III. If "use" of a covered vehicle determines whether uninsured motorists' coverage applies, what is the proper definition of "use" consistent with Sections 431-448, 294-2(12),

---

Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a no-fault policy upon such vehicle which provides the coverage required by this chapter and shall maintain the no-fault policy at all times for the entire motor vehicle registration period. (2) The requirements of this subsection may be satisfied by any owner of a motor vehicle if:

(A) Such owner provides a surety bond, proof of qualifications as a self-insurer, or other securities affording security substantially equivalent to that afforded under a no-fault policy, providing coverage at all times for the entire motor vehicle registration period, as determined and approved by the commissioner under regulations, and

(B) The commissioner is satisfied that in case of injury or death or property damage, any claimant would have the same rights against such owner as the claimant would have had if a no-fault policy had been applicable to such vehicle.

[4] HRS § 294-10(a) (Supp. 1983) reads as follows:

Required policy coverage. (a) In order to be a no-fault policy, an insurance policy covering a motor vehicle shall provide, in addition to the coverage specified in section 294-4, insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others, except property owned by, being transported by, or in the charge of the insured, which *arise out of the ownership, operation, maintenance, or use of the motor vehicle:*

(1) Liability coverage of not less than $25,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm *arising out of ownership, maintenance, use, loading, or unloading of the insured vehicle;*

(2) Liability coverage of not less than $10,000 for all damages arising out of injury to or destruction of property including motor vehicles and including the loss of use thereof, but not including property owned by, being transported by, or in the charge of the insured, as a result of any *one accident arising out of ownership, maintenance, use, loading or unloading, of the insured vehicle.* (Emphasis added.)

294-8(a) and 294-10(a) of the Hawaii Revised Statutes, and the common law of Hawaii?

## III.

We answer the first question in the negative.

The policy in question restricts liability to persons "occupying" the vehicle. On the other hand, HRS § 431-448 requires that uninsured motorist insurance cover the "ownership, maintenance, or use" of the vehicle.

National Union argues that the policy provision controls and that Olson is not entitled to recover since he was not "occupying" the vehicle when the accident occurred. In support of its position, National Union contends that Part I of HRS Chapter 294 should be read *in pari materia* with HRS § 431-448. Specifically, it points to HRS § 294-2(12) which defines the phrase "operation, maintenance, or use" as "occupying, entering into and alighting from" the motor vehicle, and that Olson's activity at the time of the accident did not fall within any of the activities required under HRS § 294-2(12).

We begin our analysis of the problem by recognizing that both the no-fault and uninsured motorist statutes have as their purpose the protection of users of motor vehicles from bodily injury, sickness, or disease, including death, resulting from motor vehicle accidents. *See* HRS §§ 431-448, 294-1, 294-2(1). Furthermore, we recognize that the legislature intended the phrase "operation, maintenance or use" in HRS Chapter 294 to be a term of art which when used throughout the chapter means accidents resulting from activities prescribed "in the immediate proximity of the vehicle." HRS § 294-2(12); Conf. Comm. Rep. No. 28, in 1974 House Journal, at 864, 866.

To recognize National Union's position would require us to acknowledge that the policy provision can be paramount over the statutory provision when a conflict exists. We have in the past voided such a policy provision where it conflicted with the statute. *See Kau v. State Farm,* 58 Haw. 49, 564 P.2d 443 (1977); *Walton v. State Farm,* 55 Haw. 326, 518 P.2d 1399 (1974). Therefore, we hold

that the National Union policy restriction is in conflict with the statute and is void.

Other jurisdictions have held that insurance policies with uninsured motorist provisions which purport to restrict the applicability of uninsured motorist statutes are void. *See Oberkramer v. Reliance Insurance Co.*, 650 S.W.2d 300 (Mo. Ct. App. 1983); *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984); *Rau v. Liberty Mutual Insurance Co.*, 21 Wash. App. 326, 585 P.2d 157 (1978).

## IV.

The third certified question is whether Olson's lighting of the flare was consistent with the definition of "use" in HRS § 431-448.

The legislature enacted HRS § 431-448 to require an insurer to pay the insured for bodily injury or death which the insurer is legally required to pay under the liability provisions of the policy when the other party involved is uninsured. Hse. Stand. Comm. Rep. No. 194, in 1965 House Journal, at 582; Sen. Stand. Comm. Rep. No. 429, in 1965 Senate Journal, at 1013. Once it is determined that the other party is uninsured, the liability provisions of the policy control and are determinative of the extent of the insured's coverage. *See Oberkramer*, 650 S.W.2d at 302.

The federal district court determined that the ambulance Olson was driving was covered by the policy, Olson was using the ambulance with permission and was therefore an insured person for purposes of the liability provisions of the policy. That court also determined that Olson's use was within the scope of permission granted. We agree with these conclusions. In addition, we find that as instructed by his superior, Olson was lighting a flare to guide traffic and the flares were carried in the ambulance for exactly the purpose to which Olson put them. Olson's lighting of the flare was an activity which was reasonably calculated to safeguard the ambulance and its occupants from a motor vehicle accident. It cannot be said that Olson's activity was not within the term "use" within the uninsured motorist and liability provisions of the policy.

V.

The second certified question will not be reached because the first and third are dispositive.

For the reasons stated, on the facts of this case, Olson has uninsured motorist coverage within the ILS insurance policy and HRS § 431-448.

*Edmund K. U. Yee (Harvey E. Henderson, Jr.,* with him on the briefs) for plaintiff-appellant.

*James Krueger (Timothy P. McNulty* and *Magali V. Richter* with him on the brief) for defendant-appellee.