185 P.3d 871

**Lilivau LIKI, Plaintiff–Appellant,**

v.

**FIRST FIRE & CASUALTY INSURANCE OF HAWAII, INC., and M. Nakai Repair Service, Ltd., Defendants–Appellees.**

**No. 28076.**

Intermediate Court of Appeals of Hawai'i.

Feb. 29, 2008.

Richard Turbin, Rai Saint Chu, and Sidney D. Smith Jr. (Turbin Chu Smith), Honolulu, on the briefs, for Plaintiff–Appellant.

Michael N. Tanoue, Steven J.T. Chow, and Jeffrey S. Masatsugu (The Pacific Law Group), Honolulu, on the briefs, for Defendants–Appellees.

RECKTENWALD, C.J., and WATANABE, J. with NAKAMURA, J., concurring separately.

Opinion of the Court by
RECKTENWALD, C.J.

Plaintiff–Appellant Lilivau Liki (Liki) was injured when he was struck by an uninsured motor vehicle at a gas station. At the time of the accident, Liki was an employee of Defendant–Appellee M. Nakai Repair Service, Ltd. (M. Nakai), and he was cleaning a sump at the gas station as part of his job duties. M. Nakai had assigned a company truck to Liki, which Liki drove to the gas station on the morning of the accident. Liki parked the truck at the station, and was cleaning the sump using tools that he had

transported in the truck when the uninsured motorist backed into him.

The truck was covered by a Business Auto Policy issued by Defendant–Appellee First Fire & Casualty Insurance of Hawaii, Inc. (First Insurance). The policy had an uninsured motorist (UM) endorsement, and Liki sought coverage under the endorsement. After First Insurance denied coverage, Liki filed a complaint for declaratory relief in the Circuit Court of the First Circuit (circuit court). First Insurance and M. Nakai (collectively Defendants) filed a motion for summary judgment, which the circuit court granted on the ground that Liki had an insufficient connection with the M. Nakai truck at the time of the accident to bring him within the scope of the policy's UM coverage. Liki now appeals from: (1) the final judgment entered on July 11, 2006 by the circuit court in favor of Defendants (Final Judgment), and (2) the order filed on July 11, 2006 granting Defendants' motion for summary judgment (Order).[1]

This appeal requires us to apply the "chain of events" test adopted by the Hawai'i Supreme Court in *Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 132–33, 883 P.2d 38, 53–54 (1994). Applying that test here, we conclude that the circuit court erred in granting summary judgment to Defendants. Accordingly, we vacate the Final Judgment and the Order, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

We construe the facts in the light most favorable to Liki, the non-moving party. *Price v. AIG Hawai'i Ins. Co., Inc.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005). Viewed in that light, the record establishes that on December 31, 2003, Liki drove a truck owned by his employer, M. Nakai, from his home to work. He drove this truck, which was assigned to him, to and from work every day for more than a year, and kept it at his house on the weekends. He had been driving a company truck since his employ-

1. The Honorable Karen S.S. Ahn presided.

ment with M. Nakai began about thirty years ago.

Liki arrived at work at M. Nakai's office on that day at about 7:00 a.m. After receiving their assignments, he and his co-worker, Singa Manu (Manu), left the office to carry out those assignments, which included cleaning the sumps at two different gas stations. Cleaning a sump involves "removing water or trash that [has] accumulated in the sump." They cleaned the sump at the first gas station and proceeded to the next one.

When they arrived at the second gas station, the Mililani Mauka Tesoro Gas Station (Tesoro gas station), Liki parked the truck about ten to fifteen feet from the sump. After parking the truck, Liki and Manu unloaded tools and a vacuum from the truck, and placed safety cones around the sump. Manu went to a grassy area to empty the vacuum while Liki began to clean the sump. Liki tried to loosen and dig the debris out of the sump with a screwdriver and other tools. Not including the time that they unloaded the cones and placed them around the sump, Liki made at least two trips back and forth between the sump and the truck to get tools to clean the sump. About twenty to thirty minutes into their work, a driver backed her vehicle away from one of the gas pumps and struck Liki while he was kneeling in the sump.[2] According to Liki, if the accident had not occurred, Liki would have continued his "normal routine to clean the sump and then load the truck and go to the next job."

The vehicle that struck Liki was uninsured. The truck that Liki drove to the Tesoro gas station was insured by First Insurance under a Business Auto Policy (Policy) issued to M. Nakai. The "named insured" listed in Item One of the Renewal Declaration of the Policy was "M. Nakai Repair Service, Ltd." Under the heading "Who is Insured," the Policy, as amended by a document entitled "Changes in Policy—Hawaii," provided in relevant part:

1. **You** are an **insured** for any covered auto.

---

2. Manu recalled being at the Tesoro gas station "for more than an hour" when Liki was struck by the other vehicle, and also recalled that the truck was parked "approximately two car lengths (20 feet) away from the sump." Howev-

2. Anyone else is an **insured** while using a covered **auto you** own, hire or borrow with a reasonable belief that such **insured** is entitled to do so....

 a. The owner of a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

 b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours.**

 c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

(Boldface type in original.)

The Policy also provided that " '[y]ou' and 'your' mean the person or organization shown as the named insured in ITEM ONE of the declarations."

The Policy also included a UM endorsement. The UM endorsement of the Policy, entitled "Uninsured Motorists Insurance—Hawaii (Non–Stacked)," stated under Part B.1.:

**We** will pay all sums the **Insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle.** The damages must result from **bodily injury** sustained by the **Insured** caused by an **accident.** The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle.**

(Boldface type in original.)

Part D of the UM endorsement, under the heading, "WHO IS INSURED," states:

1. **You** or any **family member.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, **loss** or destruction.

er, for the purposes of reviewing the grant of summary judgment for Defendants, we view the evidence in the light most favorable to Liki, and thus accept Liki's recollection with regard to these issues as correct.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **Insured.**

(Boldface type in original, underscoring added.)

Part A of the UM endorsement defines an "uninsured motor vehicle", in relevant part, as a "land motor vehicle or **trailer** ... [f]or which no liability bond or policy at the time of an **accident** applies." The UM endorsement also defines "Occupying" to mean "in, upon, getting in, on, out or off."

M. Nakai gave Liki an insurance card to put in the truck, and Liki thought that he had "full coverage" under the Policy. He did not buy his own car insurance because he thought the insurance policy for the truck would cover him, and stated that "[n]o one ever told me that I needed to get additional automobile insurance coverage or a personal automobile insurance policy." Neither Liki nor his wife owned a vehicle at the time of the accident. Liki occasionally used the truck for personal errands while on the way to work or on the way home from work, but he knew that no one else besides M. Nakai employees could ride in the truck with him.

After the accident, Liki requested UM benefits under the Policy, but First Insurance denied UM coverage after an investigation. Liki filed a complaint for declaratory relief on June 8, 2005, asserting his entitlement to UM coverage "as an 'insured' and/or 'covered person' under the terms" of the Policy. The Defendants filed a motion for summary judgment, which the circuit court orally granted at a July 3, 2006 hearing. In its oral ruling, the court found that the truck was not related to Liki's cleaning of the sump or the occurrence of the accident. In support of that conclusion, the court stated in relevant part:

[Liki] had driven the car to the site, then parked it and proceed [sic] to work at a site apart from the truck. [Liki's] only other connection with the truck during this time period was to retrieve cones and tools

which by happenstance were located in the truck.

The cones were not set out to protect the truck, but to mark off the sump work site. Other than as transport to the job site, the truck was not related to [Liki's] cleaning of the sump. The truck was also not related to the occurrence of the crash.

Then, the court concluded:

[Liki's] occupancy of the insured vehicle did not occur during the chain of events which resulted in [Liki] being struck by the uninsured vehicle. When he was hurt, [Liki] had an insufficient connection with the insured vehicle to bring him within U.M. coverage.

On July 11, 2006, the court entered the written Order granting the Defendants' motion for summary judgment, as well as the Final Judgment in favor of Defendants and against Liki. On August 2, 2006, Liki filed a timely Notice of Appeal.

## II. ISSUE PRESENTED

Liki contends that "the circuit court erred in granting [Defendants'] motion for summary judgment and concluding as a matter of law, based on the undisputed facts, that LIKI's connection with his employer's truck, which was insured by FIRST INSURANCE, was insufficient to bring him within UM coverage." [3]

## III. STANDARD OF REVIEW

A circuit court's grant or denial of summary judgment is reviewed *de novo*. *Price v. AIG Hawai'i Ins. Co., Inc.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005) (citing *Hawai'i Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)). "On appeal, an award of summary judgment is reviewed under the same standard applied by the trial courts." *Dawes v. First Ins. Co. of Hawai'i Ltd.*, 77 Hawai'i 117, 121, 883 P.2d 38, 42 (1994). Under Hawai'i Rules of Civil Proce-

---

3. Defendants argue that this court should "disregard" Liki's alleged error because the opening brief failed to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rules 28(b)(3) and (4). However, based on our review of the record we conclude Liki substantially complied with Rule 28(b)(4). Moreover, his non-compliance with Rule 28(b)(3) was not material in the circumstances of this case, and was in any event cured by Liki in the reply brief. Accordingly, this court will address Liki's arguments on the merits.

dure (HRCP) Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party." *Price*, 107 Hawai'i at 110, 111 P.3d at 5 (quoting *Hawai'i Cmty. Fed. Credit Union*, 94 Hawai'i at 221, 11 P.3d at 9).

## IV. DISCUSSION

We respectfully conclude that the circuit court erred as a matter of law in granting summary judgment to the Defendants. Specifically, the circuit court erred in its application of the "chain of events" test adopted in *Dawes v. First Ins. Co. of Hawai'i, Ltd.*, 77 Hawai'i 117, 132–33, 883 P.2d 38, 53–54 (1994).

In *Dawes*, a passenger in an insured vehicle, Elizabeth Jean Bockhorn (Bockhorn), was struck and killed by an uninsured motorist while walking on the side of the highway to seek help after the vehicle broke down. *Id.* at 119–120, 883 P.2d at 40–41. The plaintiff-appellant, Jeanette Dawes (Dawes), individually and as special administrator of the estate of her daughter, Bockhorn, brought an action to recover UM benefits under the policy covering the vehicle in which Bockhorn had been a passenger. *Id.* at 119–21, 883 P.2d at 40–42. The insurance policy in *Dawes* contained uninsured motorist provisions similar to the provisions in the instant case. *Id.* at 120, 883 P.2d at 41.

The majority of the court concluded that the "outcome-dispositive issue" was whether, at the time of the accident, Bockhorn was a "covered person" within the meaning of the insurance policy "as constrained by the public policy underlying" the provisions of the Hawaii Revised Statutes (HRS) relating to UM coverage. *Id.* at 125, 883 P.2d at 46. The majority formulated a "chain of events" test to answer that question:

> For purposes of entitlement to UM benefits, (1) if a person was a passenger in an insured vehicle being operated by a named insured or a named insured's family member, (2) during the chain of events resulting in injury to the person caused by an accident involving an uninsured motor vehicle, (3) then the person is' a "covered person" at the time of his or her injury to the same extent as the named insured or the named insured's family member would be entitled to receive UM benefits under the applicable UM policy.

*Id.* at 133, 883 P.2d at 54.

Applying this test, the Hawai'i Supreme Court held that Bockhorn was a "covered person" within the meaning of the UM provisions of the policy and that Dawes was entitled to UM benefits because:

> (1) Bockhorn was a passenger in the insured vehicle; (2) the insured vehicle was being operated by Shimp, a "family member" of the named insured; (3) the insured vehicle broke down; (4) as a result of the breakdown, the occupants of the insured vehicle, including Bockhorn, exited and proceeded on foot to the Kona airport in order to obtain alternative transportation and repair assistance; and (5) en route to the group's destination, Bockhorn sustained fatal injuries as a result of the operation of an uninsured vehicle by an uninsured motorist.

*Id.*

 Defendants argue that Liki did not satisfy the first part of the *Dawes* chain-of-events test because he "was not a passenger in an insured vehicle being operated by a named insured or a named insured's family member." We reject this argument. Although the decedent in *Dawes* was a passenger in an insured vehicle being operated by a family member of the named insured, we do not read *Dawes* as limiting coverage to *only* individuals who can satisfy those conditions. *See Dawes*, 77 Hawai'i at 131, 883 P.2d at 52 (holding that HRS § 431:10C–301(b) mandates "that auto policies extend UM coverage for the protection of *all* insured 'persons . . . who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . .'") (italics in original; citations omitted). Liki was a permissive user of the vehicle, and thus was,

under the terms of the Policy and the holding in *Dawes*, an insured person who was entitled to UM coverage if he can demonstrate "some connection with the insured vehicle." *Id.* (citation omitted).

Defendants next argue that Liki fails to satisfy the second element of the *Dawes* test since he cannot "show that his occupancy of the company vehicle started the chain of events which resulted in his injury." They argue that the chain of events must have "pertained to and derived directly from the insured vehicle itself." In effect, they suggest that *Dawes* should be limited to its facts, i.e., a situation in which an occupant of a vehicle is forced to walk because the vehicle broke down.

■ However, we do not believe that this narrow reading of *Dawes* is correct. The court in *Dawes* noted that "the critical element with respect to such claimants is a sufficient 'connection with the insured vehicle.' "[4] 77 Hawai'i at 132, 883 P.2d at 53 (citation omitted). The court considered a four-part test that had been adopted by the Washington Court of Appeals in *Rau v. Liberty Mutual Ins. Co.*, 21 Wash.App. 326, 585 P.2d 157 (1978), *abrogated in part by Butzberger v. Foster*, 151 Wash.2d 396, 89 P.3d 689 (2004) (abrogating the vehicle orientation factor of the four-part test), but rejected that test as unduly restrictive and inconsistent with the broad remedial objectives of the UM statute.[5] 77 Hawai'i at 127–28, 883 P.2d at 48–49.

■ In *Dawes*, the connection was supplied by the vehicle breaking down while the decedent was occupying it. Here, it is supplied by the fact that Liki was an employee of the named insured, who was using the truck during the course of his employment to get to and from the jobsite where he was injured, and to store and transport the equipment that he was using as part of his duties at the time he was injured. All of these factors establish "some connection with the insured vehicle," such that UM coverage extends to the injuries that Liki received as a pedestrian. *Id.* at 132, 883 P.2d at 52.

Many other courts have found coverage when an employee driving a company vehicle was injured outside the vehicle during the course of his or her employment in circumstances substantially similar to those involving Liki. For example, in *Federated Mutual Implement & Hardware Ins. Co. v. Gupton*, 357 F.2d 155 (4th Cir.1966), a gas station attendant drove his employer's pickup truck to deliver gasoline to a motorist who had run out of fuel. He parked the pickup truck, removed a can of gasoline from it, and began filling up the motorist's tank when she started the car and backed up, pinning him against the pickup. The court found that the attendant was "using" the pickup truck at the time of the accident, and that the attendant was entitled to UM coverage. *Id.* at 156.

In *Harris v. Magee*, 573 So.2d 646 (Miss. 1991), *overruled on other grounds by Meyers v. American States Ins. Co.*, 914 So.2d 669 (Miss.2005), the foreman of a construction crew was driving a company pickup truck to a jobsite, when he stopped on the way to assist in repairing a company-owned crane which had broken down by the side of the road. *Id.* at 651–52. The foreman parked about 75 feet from the crane and joined several other members of his crew in inspecting the crane to determine if it could be repaired. The foreman sent a member of his crew back to the truck to look for a part. While he was waiting for that crewmember

---

4. We note that one of the statutes relied on by the supreme court in *Dawes*, HRS § 431:10–213 (1987 Spec. Pamphlet), was in effect at the time of that accident, but was subsequently repealed by Act 195, § 43, 1989 Haw. Sess. Laws 374, 388. 77 Hawai'i at 122 n. 2, 127–28, 883 P.2d at 43 n. 2, 48–49. However, as the *Dawes* court observed, the repeal appeared merely to be intended to eliminate "substantially duplicative" provisions in the insurance code, *id.* at 122 n. 2, 883 P.2d at 43 n. 2, and accordingly we do not believe that the repeal changes the holding of *Dawes*.

5. Under the *Rau* court's test, the four following criteria must be met at the time of injury:
 (1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not actually be touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.
 585 P.2d at 162.

to return, the foreman was struck by an uninsured motorist. *Id.*

The court, noting that the truck "was set up to carry materials used on the job and [that] tools which could be used to repair the crane were carried on the truck," found that the foreman was "using" the truck at the time of the accident and was entitled to UM coverage. *Id.* at 650–51. The court observed that the evidence established that "the truck was being used by [the foreman] and his crew to repair the crane." *Id.* at 651.

In *Cherry v. Truck Ins. Exchange,* 77 Wash.App. 557, 892 P.2d 768 (1995), a tow truck driver was injured while working on the engine of an uninsured vehicle. The Washington Court of Appeals found that the driver was "using" the truck at the time of his injury and that accordingly, there was UM coverage. In applying the causal connection requirement of the *Rau* test, the court noted that "a connection exists between [the driver] and the emergency service tow truck, because he was using that truck with permission to make an emergency service call, and he was actually helping the stranded motorist when he was injured." *Id.* at 772; *see id.* at 771 n. 3 (the necessary "logical connection may be shown, for instance, by demonstrating that the injured person plausibly was acting within the scope of the permission to use the vehicle given by the named insured").

In *Transport Ins. Co. v. Ford,* 886 S.W.2d 901 (Ky.App.1994), a tow truck driver was struck by an uninsured motorist while standing next to the tow truck and inspecting the connection to the vehicle he was towing. The Kentucky Court of Appeals applied a four-part test similar to that in *Rau,* and concluded that the driver was entitled to coverage. In applying the causation requirement of the test, the court noted that "[t]he causal relationship between the injury and the use of the insured vehicle was [the driver's] towing of the vehicle and his need to be in and about it to perform his duties." *Id.* at 903.

*Rau* is also instructive. The plaintiff there was a truck driver who had pulled over to the side of the road and walked across a highway to ask for directions; he was injured while walking back to his truck. In finding that there was coverage, the court noted that:

> [The driver] was employed as a truck driver by a motor carrier which insured the truck he was driving as a commercial vehicle. He was out making deliveries with the vehicle with the owner's permission. Common sense tells us, ... that the parties contemplated that the driver of a delivery truck on his route might well be expected to have to occasionally leave the truck to ask directions....

585 P.2d at 162.

However, some courts have found there is no UM coverage in circumstances similar to those here. In *U.S. Fire Ins. Co. v. Parker,* 250 Va. 374, 463 S.E.2d 464 (1995), the victim was a landscape gardener who was employed by the manager of a residential development. She was struck by an uninsured motorist while planting cabbages near the entrance to the development. She and two other workers had used the development's pickup truck to carry the cabbages and their tools to the worksite. They parked the truck in a location that would provide them with a "safety barrier" as they worked, and left the door to the truck open so they could hear the two-way radio inside the truck. The victim was about 12 to 15 feet from the truck when she was hit. *Id.* at 465.

The Supreme Court of Virginia found there was no UM coverage. The court, after citing the relevant provisions of the Virginia Insurance Code,[6] noted that "[w]hether the issue is framed as 'while using' or 'arose out of the use of,' the crucial inquiry is: Was there a causal relationship between the incident and the employment of the insured vehicle as a vehicle." *Id.* at 466 (citation omitted). The court went on to hold "the claimant in the present case was not engaged in a transaction essential to the use of

---

**6.** The *Parker* court noted: "As pertinent, [Virginia] Code § 38.2–2206 provides that no policy of bodily injury or property damage liability insurance 'relating to the ownership, maintenance, or use of a motor vehicle' shall be issued in the Commonwealth unless it contains provisions undertaking to pay 'the insured all sums that he is legally entitled to recover as damages' from the operator of an uninsured or underinsured motor vehicle." 463 S.E.2d at 465.

the pickup truck when she was injured. In other words, she was not using the truck as a vehicle at that time." *Id.*

It is worth noting that the *Rau, Ford* and *Cherry* courts found there was coverage even though they were applying a test that was far more restrictive than that adopted by our supreme court in *Dawes*. The court in *Dawes* rejected outright three parts of the *Rau* test (proximity to the vehicle, orientation to the vehicle, and engaging in a transaction essential to the use of the vehicle). 77 Hawai'i at 127, 883 P.2d at 48. Moreover, although it imposed a causation requirement seemingly similar to *Rau*, the supreme court noted that the causation requirement it was adopting was not limited to causation based upon the victim's use of the vehicle. *Id.* at 127 n. 10, 883 P.2d at 48 n. 10 (coverage is a function of victim's connection with the insured vehicle, and not the victim's use of the vehicle). For that reason, we conclude that our supreme court would reject the "using the truck as a vehicle" requirement imposed by the Supreme Court of Virginia in *Parker*.[7]

■ Moreover, although the court in *Dawes* refused to impose a requirement that the accident take place in immediate proximity to the insured vehicle, *id.* at 127, 883 P.2d at 48, we do not read *Dawes* as precluding consideration of physical proximity to the extent it tends to corroborate the connection between an injured employee of the named insured and the insured vehicle. The record here establishes that Liki was no more than 10–15 feet from the truck and using the tools that he had transported to the jobsite in the truck, when he was injured.[8] Viewing the evidence in the light most favorable to Liki, Liki was doing exactly what was expected of him by his employer while using the truck under these circumstances. His "actions were part of the reasonably expected use of the vehicle as contemplated by the parties."

*Allied Mutual Ins. Co. v. Action Electric Co.*, 256 Neb. 691, 593 N.W.2d 275, 283 (1999); *Cherry*, 892 P.2d at 772 (coverage exists when "a common sense understanding of the particular use at issue indicates that a connection exists between the injured person and the insured vehicle, thus bringing the event within the reasonable expectations of the insured when contracting for coverage of persons using the insured vehicle"). Put another way, denying UM coverage to an employee such as Liki who is injured in these circumstances would not be "in accord with the reasonable expectations of a layperson." *Dawes*, 77 Hawai'i at 128, 883 P.2d at 49 (quoting *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 209, 684 P.2d 960, 964 (1984)).

This conclusion is also supported by the supreme court's holding in *National Union Fire Ins. Co. v. Olson*, 69 Haw. 559, 751 P.2d 666 (1988). Olson was an employee of International Life Support (ILS), and was working in an ILS ambulance that responded to a motorcycle accident. At the accident scene, Olson obtained a flare from the back of the ambulance and was standing in the roadway attempting to light the flare when he was struck by an uninsured motorist. The supreme court concluded there was UM coverage under a policy similar to that here, noting that "Olson was lighting a flare to guide traffic and the flares were carried in the ambulance for exactly the purpose to which Olson put them. Olson's lighting of the flare was an activity which was reasonably calculated to safeguard the ambulance and its occupants from a motor vehicle accident." *Id.* at 564, 751 P.2d at 669. Although the court in *Dawes* criticized parts of the analysis in *Olson* as "inaccurate and unduly restrictive," the *Dawes* court nevertheless agreed with the holding in *Olson* that the policy

---

7. In reaching this conclusion, we note that the Virginia statute at issue in *Parker, see* 463 S.E.2d at 465 (discussing Virginia Code § 38.2–2206), differs from the Hawai'i Insurance Code, *see* HRS § 431:10C–301(b)(3) in that the Virginia UM statute contains an explicit reference to "ownership, maintenance, or use" of the vehicle. The absence of such language in the Hawai'i UM statute was highly material to the court's analysis in *Dawes*. 77 Hawai'i at 124, 883 P.2d at 45 ("[i]t is significant that the phrase 'operation,

maintenance, or use' nowhere appears in HRS § 431:10C–301(b)(3), which deals exclusively with *UM coverage* ....")(emphasis in original).

8. We note that the dissenting justices in *Dawes* were particularly concerned that the majority's test did not include a physical proximity requirement. 77 Hawai'i at 136–38, 883 P.2d at 57–59 (Moon, C.J., dissenting). However, the element of physical proximity was present in Liki's case.

language restricting coverage to persons "occupying a covered auto" was void. 77 Hawai'i at 131, 883 P.2d at 52.

While Mr. Olson's duties at the moment of the accident were focused on protecting the ambulance and its occupants, we do not think that fact was dispositive. Rather, because Mr. Olson was doing the job he was supposed to perform after being transported to the scene in the insured vehicle and while using equipment that was transported in that vehicle, his injury had "some connection with the insured vehicle." *Id.* at 131, 883 P.2d at 52 (citation omitted). The same analysis applies here and leads us to conclude that the circuit court erred in granting summary judgment to Defendants.

## V. CONCLUSION

We vacate (1) the July 11, 2006 Final Judgment in Favor of Defendants First Fire & Casualty Insurance of Hawaii, Inc. and M. Nakai Repair Service, Ltd. and Against Plaintiff Lilivau Liki and (2) the July 11, 2006 Order Granting Defendants First Fire & Casualty Insurance of Hawaii, Inc. and M. Nakai Repair Service, Ltd.'s Motion for Summary Judgment, Filed on March 7, 2006, and remand for proceedings consistent with this opinion.

Concurring Opinion by NAKAMURA, J.

I concur in the result reached in this case because I believe it is required under a fair reading of *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 883 P.2d 38 (1994). The exact parameters of the chain-of-events test adopted in *Dawes* are unclear. And the narrow holding of *Dawes,* which extended uninsured motorist (UM) coverage to injuries sustained as the result of the breakdown of an insured vehicle, does not compel a finding of UM coverage in this case. However, the analysis underlying the adoption of the chain-of-events test by the majority in *Dawes* and the tenor of the majority's opinion leaves little doubt that the *Dawes*

majority would apply the chain-of-events test to find UM coverage in this case.

Although I feel constrained by *Dawes* to concur in this case, I write separately because I share the concern of the *Dawes* dissent that the chain-of-events test is overly broad and is difficult to apply in determining whether a person who previously occupied an insured vehicle is entitled to UM coverage. *Id.* at 133, 143, 883 P.2d at 54, 64 (Moon, C.J., dissenting). As noted by the *Dawes* dissent, "there is hardly any activity in our society which is not preceded by the use of an automobile." *Id.* at 143, 883 P.2d at 64 (brackets omitted). Under the chain-of-events test, it is unclear to what extent the chain of events must relate to the injured person's occupancy of the insured vehicle or how the chain of events can be broken. Thus, without more guidance, the chain-of-events test could conceivably be construed as "afford[ing] virtually limitless coverage once a claimant has occupied an insured vehicle." *Id.* The uncertainty over the application of the test makes it difficult for parties to an insurance contract to understand the covered risks. Insurers typically respond to such uncertainty by raising premiums to all insureds to account for the increased risk. *See id.* at 138 n. 5, 883 P.2d at 59 n. 5.

If I were writing on a clean slate, I would adopt the analysis of the dissent in *Dawes,* and I would affirm the trial court's grant of summary judgment in favor of Defendants–Appellees First Fire & Casualty Insurance of Hawaii, Inc. and M. Nakai Repair Service, Ltd. Under the analysis of the *Dawes* dissent, this case would turn on whether Plaintiff–Appellant Lilivau Liki (Liki) was engaged in the "use" of his company's insured truck at the time of the accident resulting in his injuries. *Id.* at 136, 883 P.2d at 57.

Unlike the claimant in *Dawes,* whether Liki was in a reasonable physical proximity to his company's truck when he was struck by the uninsured motorist is subject to debate.[1] Thus, in Liki's case, the imposition of

---

1. In *Dawes v. First Ins. Co. of Hawai'i, Ltd.,* 77 Hawai'i 117, 119–20, 883 P.2d 38, 40–41 (1994), the claimant was approximately one mile from the insured vehicle, which had broken down, when she was struck by an uninsured motorist. The *Dawes* dissent would have imposed a reason-

able physical proximity limitation for uninsured motorist (UM) coverage and would have denied coverage to the claimant because she was not in a reasonable physical proximity to the insured vehicle at the time of the accident. *Id.* at 138, 144, 883 P.2d at 59, 65.

a physical proximity restriction for UM coverage would not have been dispositive. Other jurisdictions have imposed requirements in addition to physical proximity that a claimant must satisfy to qualify for UM coverage. These requirements include that the claimant, at the time of the injury, was oriented toward the insured vehicle, *Curry v. Huron Ins. Co.*, 781 A.2d 1255, 1258 (Pa.Super.Ct.2001), and was engaged in a transaction essential to the use of the insured vehicle. *Id.; U.S. Fire Ins. Co. v. Parker*, 250 Va. 374, 463 S.E.2d 464, 466 (1995); *Butzberger v. Foster*, 151 Wash.2d 396, 89 P.3d 689, 695 (2004) (en banc). Such requirements provide reasonable guidelines for determining whether the claimant's injuries arise out of his or her use of the insured vehicle.

In this case, Liki had parked his company's truck, had exited it, and was engaged in his work of cleaning the gas station's sump when he was struck by the uninsured vehicle. There is no indication in the record that the truck itself was specially designed for use in cleaning sumps. He was not injured while walking back and forth between the truck and the sump to obtain or return tools. At the time of the accident, Liki was not oriented to the truck, but was working on cleaning the sump. He was not engaged in a transaction or activity that was essential to his use of the truck. Rather, he used the truck for transportation to the job site and this use had been completed before he began performing his job of cleaning the sump.

Absent *Dawes*, I would have concluded that Liki was not entitled to UM coverage because he was not using the insured truck at the time of the accident, and thus, I would have affirmed the trial court. *See Curry*, 781 A.2d at 1256–59 (holding that there was no UM coverage for claimant who drove an insured company truck to an airport runway to perform a compaction study, used the truck's rotating beacon to demarcate his position, and was struck by another vehicle twenty feet from the truck while taking measurements for the study); *Parker*, 463 S.E.2d at 465–66 (holding that there was no UM coverage for claimant who drove an insured company truck to a worksite to plant cabbages, parked the truck to provide a safety barrier to protect against passing motorists, and was struck by an uninsured motorists twelve to fifteen feet from the truck while digging a hole to plant the cabbages); *see also Chock v. Gov't Employees Ins. Co.*, 103 Hawai‘i 263, 267–68, 81 P.3d 1178, 1182–83 (2003) (stating test for determining whether the injuries sustained by a claimant seeking UM benefits arise from the operation, maintenance, or use of an *uninsured* vehicle).