**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Plaintiff-Appellee*, | No. 17-15947 |
| | D.C. No. 1:16-cv-00059-KJM |
| v. | ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF HAWAI'I |
| MICHAEL MIZUNO, *Defendant-Appellant*. | |

Filed August 5, 2019

Before: Kim McLane Wardlaw, Marsha S. Berzon, and Johnnie B. Rawlinson, Circuit Judges.

Order

## SUMMARY[*]

**Certified Question to the Supreme Court of Hawai'i**

The panel certified the following question of state law to the Supreme Court of Hawai'i:

> Under Hawai'i law, is a permissive user of an insured vehicle, whose connection to the insured vehicle is permission to use the vehicle to run errands and drive to work, entitled to uninsured motorist (UM) benefits under the chain-of-events test because he was injured by an uninsured motorist?

## COUNSEL

Roy K. S. Chang and Harvey M. Demetrakopoulos, Shim & Chang, Honolulu, Hawai'i, for Defendant-Appellant.

David R. Harada-Stone, Patricia Kehau Wall, and Richard B. Miller, Tom Petrus & Miller LLLC, Honolulu, Hawai'i, for Plaintiff-Appellee.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

Pursuant to Hawaiʻi Revised Statute § 602-5(a)(2) and Rule 13 of the Hawaiʻi Rules of Appellate Procedure, we respectfully certify the following question to the Supreme Court of Hawaiʻi:

> Under Hawaiʻi law, is a permissive user of an insured vehicle, whose connection to the insured vehicle is permission to use the vehicle to run errands and drive to work, entitled to uninsured motorist (UM) benefits under the chain-of-events test because he was injured by an uninsured motorist?

Michael Mizuno (Mizuno), a permissive user of a vehicle insured under a policy issued by State Farm Mutual Automobile Insurance Company (State Farm) to Mizuno's girlfriend, Daryl-Jean S. Wong (Wong), was injured when he was struck by an uninsured motorist while crossing the street as he returned to the vehicle after running an errand. The question of whether Mizuno is entitled to UM benefits under Hawaiʻi law is determinative of the matter pending before this court and the question is not affirmatively answered by any controlling Hawaiʻi precedent. Accordingly, pursuant to Rule 13(a) of the Hawaiʻi Rules of Appellate Procedure, we respectfully request that the Hawaiʻi Supreme Court determine whether, under Hawaiʻi law, a permissive user of an insured vehicle is entitled to UM benefits when he is injured by an uninsured motorist while returning to the

vehicle after running an errand.[1]  Pursuant to Rule 13(b) of the Hawai'i Rules of Appellate Procedure, we provide "a statement of prior proceedings in the case, a statement of facts showing the nature of the cause, the question of law to be answered, and the circumstances out of which the question arises."  Haw. R. App. P. 13(b).

## I.  Statement of Facts

According to the undisputed facts, Mizuno received permission from Wong to use her vehicle because Mizuno's vehicle was undergoing repairs.  Mizuno had an automobile insurance policy issued by GEICO, with "UM limits of $50,000 per person and $100,000 per accident."  State Farm insured Wong and her vehicle, "with UM limits of $100,000 per person and $300,000 per accident."  Wong's policy with State Farm defined "Insured" in relevant part as "any other person while:  a. occupying, with a reasonable belief that he or she is entitled to do so:  (1) your car."  The policy provided that "[o]ccupying means in, on, entering, or exiting."

After receiving Wong's permission to use her vehicle, Mizuno drove the vehicle to the post office to mail the

---

[1] Rule 13(a) provides:

> When a federal district or appellate court certifies to the Hawai'i Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawai'i that is determinative of the cause and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion.

Haw. R. App. P. 13(a).

couple's bills.  Mizuno parked the vehicle across the street from the post office, walked across the street, and deposited the bills in a mailbox.  As Mizuno was returning to the vehicle, he was struck by an unidentified driver as he was approaching Wong's vehicle.  Mizuno "suffered injuries to his left leg, left arm, left wrist, and left hand, and required surgery to repair his broken left wrist."

Mizuno acknowledged that he "made a voluntary and conscious decision to stop, park and exit Wong's car near the Kaimuki Post Office on the morning of the Accident; and his decision was not caused or influenced by a mechanical breakdown or collision of some sort."  Mizuno also conceded that "[a]t the moment he was struck, [he] was not physically in, on, entering, exiting, loading or unloading Wong's car."

Mizuno sought coverage under Wong's UM policy with State Farm.  Mizuno subsequently received $50,000 pursuant to his UM policy with GEICO.

## II.  Statement of Prior Proceedings

State Farm filed a complaint for declaratory judgment in federal court, alleging that Mizuno was not entitled to benefits under Wong's UM policy because Mizuno "was not 'occupying' a 'car' at the time of the Accident, as those terms are defined in the Policy."

The district court granted summary judgment in favor of State Farm, explaining that "[c]onstruing the State Farm Policy in accord with the reasonable expectations of a layperson, the Court cannot conclude that mere occupancy - without any further connection with the vehicle - would entitle a permissive user/passenger injured by an uninsured

motor vehicle several feet away from the insured vehicle to UM coverage."

Mizuno filed a timely notice of appeal.

### III.    *Legal Circumstances*

On appeal, Mizuno contends that the district court erred in granting summary judgment in favor of State Farm because he was entitled to benefits under the State Farm policy issued to Wong.  Mizuno specifically asserts that he qualifies for benefits under the chain-of-events test first articulated by the Hawai'i Supreme Court in *Dawes v. First Insurance Co. of Hawai'i, Ltd.*, 883 P.2d 38 (Haw. 1994).  According to Mizuno, he had permission to use the vehicle, and was struck by an uninsured motorist as he was returning to Wong's vehicle after depositing their mail.  Mizuno posits that "[t]here was no break in the chain of events between his occupancy and his injury."

In its seminal decision of *National Union Fire Insurance Co. of Pittsburgh v. Olson*, 751 P.2d 666 (Haw. 1988), the Hawai'i Supreme Court considered several certified questions from our court concerning UM coverage under Hawai'i law.  *See id.* at 666.  In that case, Richard Olson (Olson), an emergency medical technician, was struck and injured by an uninsured motorist as he was placing flares at the scene of an accident.  *See id.* at 667.

National Union asserted that Olson was not covered under the employer's uninsured motorist policy because he was not "occupying" the vehicle when he was struck by the uninsured driver.  *Id.* at 668.  In response, the Court observed that "both the no-fault and uninsured motorist statutes have as their

purpose the protection of users of motor vehicles from bodily injury, sickness, or disease, including death, resulting from motor vehicle accidents." *Id.* at 669.  The Court opined that applying the definition of "occupying" to entirely bar coverage would result in a policy provision trumping these statutory mandates, and concluded that the policy restriction was "in conflict with the statute and . . . void." *Id.*

The Court explained that coverage for Olson existed under the employer's UM policy because:

> The federal district court determined that the ambulance Olson was driving was covered by the policy, Olson was using the ambulance with permission and was therefore an insured person for purposes of the liability provisions of the policy.  That court also determined that Olson's use was within the scope of permission granted.  We agree with these conclusions.  In addition, we find that as instructed by his superior, Olson was lighting a flare to guide traffic and the flares were carried in the ambulance for exactly the purpose to which Olson put them.  Olson's lighting of the flare was an activity which was reasonably calculated to safeguard the ambulance and its occupants from a motor vehicle accident.  It cannot be said that Olson's activity was not within the term use within the uninsured motorist and liability provisions of the policy.

*Id.* (internal quotation marks omitted).

In *Dawes*, an uninsured motorist killed a passenger in a vehicle driven by a covered driver after the latter's vehicle became inoperable. *See* 883 P.2d at 40–41. The passenger was not in the vehicle when she was struck. *See id.* Rather, she had walked "for twenty to twenty-five minutes [along the highway] and . . . traveled approximately one mile from the insured vehicle" when she was struck. *Id.* The UM policy provided coverage for "[a]ny other person occupying [the] covered auto," and defined "occupying . . . to mean in, upon, getting in, on, out or off." *Id.* at 41 (internal quotation marks omitted).

The Hawai'i Supreme Court held that the passenger's estate was entitled to benefits under the UM policy. *See id.* at 54. In determining whether the passenger was entitled to coverage, the Court held that the "occupying" restriction was void and could not bar coverage. *See id.* at 50. Rather, the appropriate determination was whether there was "some connection with the insured vehicle." *Id.* The Court emphasized that it would be anomalous if the passenger was denied UM coverage even though the driver, if injured under identical circumstances, would receive full benefits. *See id.* at 48. The Court adopted the following chain-of-events test for determining UM coverage:

> For purposes of entitlement to UM benefits, (1) if a person was a passenger in an insured vehicle being operated by a named insured or a named insured's family member, (2) during the chain of events resulting in injury to the person caused by an accident involving an uninsured motor vehicle, (3) then the person is a covered person at the time of his or her injury to the same extent as the named insured

or the named insured's family members would be entitled to receive UM benefits under the applicable UM policy.

*Id.* at 54 (internal quotation marks omitted). Applying this standard, the Court held that the passenger was entitled to UM benefits due to the following uncontroverted facts:

(1) [the decedent] was a passenger in the insured vehicle; (2) the insured vehicle was being operated by . . . a family member of the named insured; (3) the insured vehicle broke down; (4) as a result of the breakdown, the occupants of the insured vehicle, including [the passenger], exited and proceeded on foot to the Kona airport in order to obtain alternative transportation and repair assistance; and (5) en route to the group's destination, [the passenger] sustained fatal injuries as a result of the operation of an uninsured vehicle by an uninsured motorist.

*Id.* (internal quotation marks omitted). The Court held "as a matter of law that [the passenger] was a covered person within the meaning of the UM provisions of the . . . auto policy." *Id.*

The Court rejected requirements that the person asserting coverage be in "reasonably close geographic proximity to the insured vehicle," be "vehicle oriented rather than highway or sidewalk oriented," and be "engaged in a transaction essential to the use of the vehicle." *Id.* (quoting *Rau v. Liberty Mut. Ins. Co.*, 585 P.2d 157, 162 (Wash. Ct. App. 1978)). The Court clarified that:

> a determination as to whether [the passenger] was vehicle oriented rather than highway or sidewalk oriented at the time of her death, and whether she was engaged in a transaction essential to the use of the [insured] vehicle at the time, would be nothing more than a conclusory and self-serving exercise in semantic game playing.

*Id.* (internal quotation marks omitted) (first alteration added).

Mizuno also relies on the decision of the Hawaiʻi Court of Appeals in *Liki v. First Fire & Casualty Insurance of Hawaiʻi, Inc.*, 185 P.3d 871 (Haw. Ct. App. 2008). In *Liki*, the Court of Appeals, applying the chain-of-events test, held that an employee of a repair service was entitled to UM benefits under his employer's policy. *See id.* at 872. The employee drove his employer's truck to a gas station, where he unloaded equipment from the truck to clean a sump.[2] *See id.* at 873. The employee "parked the truck about ten to fifteen feet from the sump," and "made at least two trips back and forth between the sump and the truck to get tools to clean the sump." *Id.* During the course of cleaning the sump, an uninsured motorist "backed her vehicle away from one of the gas pumps and struck [the employee] while he was kneeling in the sump." *Id.*

Although the policy contained an "occupying" restriction, the Hawaiʻi Court of Appeals determined that the employee "was a permissive user of the vehicle, and thus was, under the

---

[2] A sump is "[a] pit or well for collecting water or other fluid." Oxford English Dictionary (https://www.oed.com/view/Entry/194024 ?rskey=GC0Rgh&result) (last visited June 17, 2019).

terms of the Policy and the holding in *Dawes*, an insured person who was entitled to UM coverage if he can demonstrate some connection with the insured vehicle." *Id.* at 873, 875–76.   In determining whether a sufficient connection to the vehicle existed, the Court of Appeals explained:

> In *Dawes*, the connection was supplied by the vehicle breaking down while the decedent was occupying it.  Here, it is supplied by the fact that [there] was an employee of the named insured, who was using the truck during the course of his employment to get to and from the jobsite where he was injured, and to store and transport the equipment that he was using as part of his duties at the time he was injured. All of these factors establish some connection with the insured vehicle, such that UM coverage extends to the injuries that [the employee] received as a pedestrian.

*Id.* at 876 (internal quotation marks omitted).  The Court of Appeals observed that the "causation requirement" adopted in *Dawes* "was not limited to causation based upon the victim's use of the vehicle."  *Id.* at 878 (citation omitted). The Court of Appeals articulated:

> we do not read *Dawes* as precluding consideration of physical proximity to the extent it tends to corroborate the connection between an injured employee of the named insured and the insured vehicle.  The record here establishes that [the employee] was no more than 10–15 feet from the truck and using

> the tools that he had transported to the jobsite in the truck, when he was injured. . . . [The employee] was doing exactly what was expected of him by his employer while using the truck under these circumstances.  His actions were part of the reasonably expected use of the vehicle as contemplated by the parties.

*Id.* (internal quotation marks omitted).  The Court of Appeals concluded that because the employee "was doing the job he was supposed to perform after being transported to the scene in the insured vehicle and while using equipment that was transported in that vehicle, his injury had some connection with the insured vehicle."  *Id.* at 879 (internal quotation marks omitted).

State Farm contends that Mizuno, as a permissive user who was injured by an uninsured motorist in the course of running errands, is not entitled to UM benefits under the terms of its policy or under the chain-of-events test.  State Farm argues that Mizuno was not "occupying" the insured vehicle at the time of the accident.  State Farm maintains that Mizuno's "connection to an insured vehicle consists of nothing more than the claimant having ridden in the vehicle to the vicinity of a later accident, or of being struck while walking toward an insured vehicle."

## IV.     *Certified Question and Further Proceedings*

*Dawes* and *Liki* applied the chain-of-events test in determining that a passenger of an insured vehicle that was disabled, and who was accompanied by a family member of the named insured had established sufficient connections to

the insured vehicle to create coverage under a UM policy, and that an employee, using his employer's truck to perform his work duties, did so as well.  However, Hawai'i precedent does not clearly address the circumstances of this case, where a permissive user was injured while returning to the insured vehicle after conducting an errand.

The parties disagree on the proper application of these cases.  Mizuno posits that *Dawes* and *Liki* mandate coverage because, under the chain-of-events test, he was required to demonstrate only that he occupied an insured vehicle and was injured as a pedestrian by an uninsured motorist.  State Farm counters that Mizuno is not entitled to coverage under *Dawes*, *Liki*, or *Olson* because Mizuno, unlike the claimants in those cases, is unable to demonstrate any connection between his injuries and the use of Wong's vehicle.

We cannot readily discern whether the Hawai'i Supreme Court would extend the chain-of-events test to this circumstance where (1) the vehicle was not disabled as in *Dawes* and a covered family member of the named insured was not present, or (2) the driver was not an employee of the insured performing work duties as in *Olson* and *Liki*.

As a result, we respectfully certify the following question to the Hawai'i Supreme Court:

> Under Hawai'i law, is a permissive user of an insured vehicle, whose connection to the insured vehicle is permission to use the vehicle to run errands and drive to work, entitled to UM benefits under the chain-of-events test because he was injured by an uninsured motorist?

We accordingly direct the Clerk of this court to forward a copy of this order, under official seal, to the Hawai'i Supreme Court, together with copies of all briefs and excerpts of record that have been filed in this court, with a certificate of service on the parties.

We stay further proceedings in this case pending a response from the Hawai'i Supreme Court. This appeal is withdrawn from submission and will be resubmitted following the conclusion of proceedings in the Hawai'i Supreme Court. The Clerk is directed to administratively close this docket, pending further order. We direct the parties to file a joint notice with the Clerk of this court within one week after the Hawai'i Supreme Court accepts or rejects the certification, and if it accepts certification, again to notify this court within one week after that Court renders its opinion. This panel retains jurisdiction over further proceedings in this court.

**SO ORDERED.**

Respectfully submitted,

Kim McLane Wardlaw, Marsha S. Berzon, and Johnnie B. Rawlinson, Circuit Judges.

FOR THE COURT:

_____

Kim McLane Wardlaw,
United States Circuit Judge, Presiding