Electronically Filed
Supreme Court
SCCQ-19-0000556
20-NOV-2020
10:11 AM
Dkt. 42 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff-Appellee,

vs.

MICHAEL MIZUNO,
Defendant-Appellant.

_____

SCCQ-19-0000556

CERTIFIED QUESTION FROM THE
UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
(NO. 17-15947; D.C. NO. 1:16-CV-00059-KJM)

NOVEMBER 20, 2020

NAKAYAMA, ACTING C.J., McKENNA, AND WILSON, JJ.,
CIRCUIT JUDGE VIOLA, IN PLACE OF RECKTENWALD, C.J., RECUSED,
AND CIRCUIT JUDGE KURIYAMA, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY WILSON, J.

I.   INTRODUCTION

On August 28, 2019, this court accepted the following

certified question from the United States Court of Appeals for

the Ninth Circuit ("Ninth Circuit"):

> Under Hawai'i law, is a permissive user of an insured vehicle, whose connection to the insured vehicle is permission to use the vehicle to run errands and drive to work, entitled to uninsured motorist (UM) benefits under the chain-of-events test because he was injured by an uninsured motorist?

We answer the certified question in the affirmative. The proper inquiry under the chain of events test in this case is whether a permissive user, such as Mizuno, has retained a "sufficient connection" to the insured vehicle. Under the chain of events test, Mizuno is entitled to UM benefits because he was a permissive user of the insured vehicle during the chain of events resulting in his injury caused by an uninsured motor vehicle.

## II. FACTUAL BACKGROUND

Michael Mizuno ("Mizuno") received permission from his girlfriend, Daryl-Jean S. Wong ("Wong"), to use her vehicle to deliver the couple's bills to the post office and to drive to his place of employment. Unable to use his own vehicle that was undergoing repairs, Mizuno drove Wong's vehicle to the post office to mail the couple's bills. He parked the vehicle across the street from the post office, walked across the street, and deposited the bills in a mailbox. As he was walking back across the street to Wong's vehicle, Mizuno was struck by an

unidentified driver,[1] causing injuries to his left leg, left arm, left wrist, and left hand.

Mizuno received compensation for his injuries pursuant to his own automobile insurance policy (UM coverage) and also sought benefits under the terms of Wong's UM policy.

Wong held an Automobile Insurance Policy with State Farm for her 2007 Toyota Camry, affording "UM limits of $100,000.00 per person and $300,000.00 per accident[.]"  The UM policy provides that State Farm "will pay damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle."  Her UM policy defines "insured" to include the named insured(s), resident relatives, and "any other person while . . . occupying, with a reasonable belief that he or she is entitled to do so[,] . . . [the insured's] car[.]"  Wong's policy defines "occupying" to mean "in, on, entering, or exiting [a vehicle covered by the State Farm policy]."  State Farm argues that the policy's occupancy restriction for uninsured users, limiting the meaning of "occupying" to situations where the "other person" is "in, on,

---

[1]    Under Hawai'i's UM laws, an unidentified driver or a hit and run driver, like the one that struck Mizuno, is considered an uninsured motorist for the purposes of UM coverage.  Dawes v. First Ins. Co. of Haw., Ltd., 77 Hawai'i 117, 122-23, 883 P.2d 38, 44-45 (1994) (quoting 8C Appleman § 5067.45, at 41-46 (1981)) (noting that Hawai'i's UM laws, HRS §§ 431:10-213 and 431:10C-301(b)(3), are remedial in nature, "provid[ing] a remedy to the innocent victims of irresponsible motorists who may have no resources to satisfy the damages they cause" and "cover the situation of a wrongful or tortious act of an uninsured motorist or a hit and run driver, or that of another unknown motorist.").

entering, or exiting" the vehicle, excludes coverage for Mizuno. Under this interpretation of "occupancy" Mizuno is excluded from coverage because he was not "in, on, entering, or exiting" the insured vehicle at the time he was struck by the unidentified motorist.

State Farm filed a complaint for declaratory judgment in the United States District Court for the District of Hawai'i, and received summary judgment in its favor in response to the question of whether Mizuno was "occupying" Wong's vehicle at the time of the accident. Mizuno appealed to the Ninth Circuit. On appeal, Mizuno contends that the district court erred by granting summary judgment in favor of State Farm because he was entitled to UM coverage provided by Wong's UM policy. Specifically, Mizuno argues that he was using the insured vehicle to deliver mail and due to an uninterrupted "chain of events" involving the insured vehicle, was injured. In so doing, Mizuno relies upon the "chain of events test" articulated by this court in Dawes v. First Ins. Co. of Haw., Ltd., 77 Hawai'i 117, 122-23, 883 P.2d 38, 43-44 (1994).

Before the Ninth Circuit and this court, State Farm contends that Mizuno was not a covered person under Wong's policy because his "connection to the insured vehicle consists of nothing more than the claimant having ridden in the vehicle to the vicinity of a later accident, or of being struck while

walking toward an insured vehicle." According to State Farm, "there is no connection between Mizuno's use of Wong's car and the accident." Although State Farm acknowledges that Mizuno was struck as he was returning to Wong's vehicle, it argues that "the accident could just as easily have happened if he were walking across the street to get to a bus stop, hail a cab or talk to a friend. The presence of the insured vehicle at the scene was purely incidental to the accident and Mizuno's injuries." State Farm argues that if this court finds UM coverage for Mizuno in the circumstances of this case, the court would be mandating "virtually limitless" coverage.

The Ninth Circuit observed that requiring State Farm to provide uninsured motorist coverage under Wong's policy to Mizuno "would extend the chain-of-events test [further than our prior precedent because in] this circumstance . . . (1) the vehicle was not disabled . . . and a covered family member of the named insured was not present, [and] (2) the driver was not an employee of the insured performing work duties . . . ." Consequently, the Ninth Circuit concluded that it "[could not] readily discern whether the Hawai'i Supreme Court would extend the chain-of-events test to [Mizuno's] circumstance[s] . . . ."

We accepted the certified question to answer this inquiry and answer in the affirmative.

### III.  DISCUSSION

Hawai'i's UM statute, Hawai'i Revised Statutes ("HRS") § 431:10C-301(b)(3) (2013),[2] requires "any motor vehicle registered or principally garaged in this State" to maintain "liability coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom[.]"  HRS § 431:10C-301(b)(3).[3]  The required UM coverage applies to "all damages arising out of accidental harm sustained as a result of any one accident and arising out of

---

[2]    Hawai'i's UM statute was previously codified as HRS § 431-448 (1978).

[3]    HRS § 431:10C-301(b) provides in relevant part:

(b) A motor vehicle insurance policy shall include:

(1) Liability coverage of not less than $20,000 per person, with an aggregate limit of $40,000 per accident, for all damages arising out of accidental harm sustained as a result of any one accident and arising out of ownership, maintenance, use, loading, or unloading of a motor vehicle;

. . . .

(3) With respect to any motor vehicle registered or principally garaged in this State, liability coverage provided therein or supplemental thereto, in limits for bodily injury or death set forth in paragraph (1), under provisions filed with and approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided that the coverage required under this paragraph shall not be applicable where any named insured in the policy shall reject the coverage in writing[.]

ownership, maintenance, use, loading, or unloading of a motor vehicle[.]"  HRS § 431:10C-301(b)(1).

Hawai'i's UM statutes have a broad ameliorative purpose.  See Conf. Comm. Rep. No. 27, in 1974 House Journal, at 864, 866 (recognizing the purpose of Hawai'i's UM statute is to provide "protection of users of motor vehicles from bodily injury, sickness, or disease, including death, resulting from motor vehicle accidents[,]" which includes "accidents resulting from activities prescribed 'in the immediate proximity of the vehicle.'").  To reflect this ameliorative purpose, this court has broadly interpreted Hawai'i's UM statute so that UM benefits apply even when an individual is not "in, on, entering, or exiting" the insured vehicle.  See National Union Fire Insurance Co. of Pittsburgh v. Olson, 69 Haw. 559, 563, 751 P.2d 666, 669 (1988) (holding that UM coverage applied to an employee who was not physically occupying the insured vehicle); Dawes, 77 Hawai'i at 131-32, 883 P.2d at 52-53 (holding that UM coverage is based on the chain of events test where an individual is entitled to UM benefits when they maintain a sufficient connection to the insured vehicle).  More recently, the ICA expanded the extent of UM coverage to a permissive user who was not occupying the insured vehicle when he was injured by an uninsured motorist. Liki v. First Fire & Cas. Ins. of Haw., Inc., 118 Hawai'i 123, 131, 185 P.3d 871, 879 (App. 2008) (holding that under the chain

7

of events test, UM coverage existed for a driver who was an employee of the insured, injured while performing work duties outside of the insured vehicle).  Hawai'i courts have broadly interpreted the coverage of UM benefits for claimants injured outside of the insured vehicle in Olson, Dawes, and Liki.

In Olson, the claimant, Olson, was working as an emergency medical technician, driving an ambulance for his employer.  69 Haw. at 560, 751 P.2d at 667.  Olson was placing a flare in the center of the road while responding to the scene of an accident when he was struck by an uninsured motorist.  Id. at 561, 751 P.2d at 667.  The insurer of the ambulance argued that Olson was not entitled to UM benefits because he was not "occupying" the vehicle at the time of his injury.  Id. at 563, 751 P.2d at 668.  Olson held that the occupancy restriction was void and that, under Hawai'i law, an insured is entitled to coverage for accidents arising from the "operation, maintenance or use" of the vehicle, and thus, "accidents resulting from activities prescribed 'in the immediate proximity of the vehicle'" are compensable.  Id. at 563-64, 751 P.2d at 669.  Accordingly, Olson was entitled to UM coverage because:  (1) "Olson was using the ambulance with permission and was therefore an insured person"; (2) "Olson's use [(lighting the flare)] was within the scope of permission granted"; (3) "Olson was lighting a flare to guide traffic and the flares were carried in the

ambulance for exactly the purpose to which Olson put them." Id. at 564, 751 P.2d at 669.

Roughly six years later, this court revisited Hawai'i's UM statute in Dawes "in order to clarify further the nature and scope of (UM) insurance coverage under applicable Hawai'i law" as it relates to claimants injured outside of the insured vehicle. 77 Hawai'i at 119, 883 P.2d at 40. In Dawes, Jeannette Dawes ("Dawes") filed a declaratory judgment action against First Insurance Company of Hawaii ("FICH") due to FICH's failure to pay UM benefits for the death of Dawes' daughter, Elizabeth Bockhorn ("Bockhorn"), who was struck and killed by an uninsured motorist. Id. Bockhorn and two friends had been traveling in a car driven by Eric Shimp ("Shimp"),[4] when the car broke down. Id. As the group was walking along the highway to locate repair assistance, approximately one mile from the insured vehicle, Bockhorn was struck and killed by an uninsured motorist. Id. at 119-20, 883 P.2d at 40-41. FICH denied Dawes' claim, asserting that Bockhorn was not a "covered person" under the UM policy because she was not occupying the insured vehicle at the time of the accident. Id. at 120-121, 883 P.2d at 41-42.

The Dawes court held that the occupancy restriction contained in the FICH policy was void. See id. at 129, 883 P.2d

_____

[4] The vehicle was owned and insured by Shimp's father, and Shimp was an insured under the policy.

at 50.  It found that passengers "need not be 'occupants' of an insured vehicle . . . but must have 'some connection with the insured vehicle' in order to be entitled to UM benefits."  Id. at 129, 883 P.2d at 50.

In reviewing the holding in Olson, the Dawes court "believe[d] that the Olson analysis [wa]s both inaccurate and unduly restrictive" because "the purpose underlying the Hawai'i UM statutes is not limited to the protection of 'users of motor vehicles[,]'" and the purpose of Hawai'i UM statutes does not limit coverage to accidents resulting from activities "in the immediate proximity of the vehicle."  Id. at 132-33, 883 P.2d at 52-53.  Rather, the Dawes court emphasized that "the critical element with respect to such claimants is a sufficient 'connection with the insured vehicle.'"  Id. at 132, 883 P.2d at 53 (quoting 8C J. Appleman, Insurance Law and Practice § 5092.35, at 381 (1981)).

Thus, the court in Dawes adopted the "chain of events test" defining coverage for UM benefits:

> (1) if a person was a passenger in an insured vehicle being operated by a named insured or a named insured's family member, (2) during the chain of events resulting in injury to the person caused by an accident involving an uninsured motor vehicle, (3) then the person is a "covered person" at the time of his or her injury to the same extent as the named insured or the named insured's family members would be entitled to receive UM benefits under the applicable UM policy.

Id. at 132-33, 883 P.2d at 53-54.  Under this rule, the Dawes court held that Dawes was entitled to UM benefits, "as a matter

10

of law . . . Bockhorn was a 'covered person' within the meaning

of the UM provisions of the FICH auto policy" because:

> (1) Bockhorn was a passenger in the insured vehicle; (2) the
> insured vehicle was being operated by Shimp, a "family member" of
> the named insured; (3) the insured vehicle broke down; (4) as a
> result of the breakdown, the occupants of the insured vehicle,
> including Bockhorn, exited and proceeded on foot to the Kona
> airport in order to obtain alternative transportation and repair
> assistance; and (5) en route to the group's destination, Bockhorn
> sustained fatal injuries as a result of the operation of an
> uninsured vehicle by an uninsured motorist.

Id. at 121, 133, 883 P.2d at 42, 54.

More than a decade after Dawes, Hawai'i courts again

considered the extent of UM coverage and whether it covered a

permissive user who was an employee of the insured and was

injured while performing work duties outside of the insured

vehicle. Liki, 118 Hawai'i at 126, 185 P.3d at 874. In Liki,

the employee of a repair service ("Liki") drove his employer's

truck to a gas station, where he unloaded equipment from the

truck and began cleaning a gas station sump. Id. at 125, 185

P.3d at 873. While working and kneeling in the sump, about ten

or fifteen feet away from the work truck, Liki was struck by an

uninsured motorist and injured. Id. at 125, 130, 185 P.3d at

873, 878.

The ICA rejected the insurer's argument that because

Liki was not "a passenger in an insured vehicle being operated

by a named insured or a named insured's family member," he was

not entitled to coverage under the Dawes chain of events test.

Id. at 127, 185 P.3d at 875.  The ICA explained that it did "not read Dawes as limiting coverage to only individuals who can satisfy those conditions."  Id.  The ICA noted that according to Dawes, Hawai'i's UM statute requires "auto policies extend UM coverage for the protection of all insured 'persons . . . who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury[.]'"  Id. (quoting Dawes, 77 Hawai'i at 131, 883 P.2d at 52).  The ICA determined that Liki "was a permissive user of the vehicle[.]" Id. at 127-28, 185 P.3d at 875-76.  The ICA also held that Liki demonstrated "some connection with the insured vehicle" because he was an "employee of the named insured, who was using the truck during the course of his employment to get to and from the jobsite where he was injured, and to store and transport the equipment that he was using as part of his duties at the time he was injured."  Id. at 128, 185 P.3d at 876.  Additionally, the ICA considered physical proximity to the insured vehicle "to the extent it tends to corroborate the connection between an injured employee of the named insured and the insured vehicle."  Id. at 130, 185 P.3d at 878.  Thus, the ICA concluded that under the chain of events test, the fact that "Liki was no more than 10–15 feet from the truck" corroborated a connection between Liki and the insured truck.  Id.

By applying the chain of events test to Liki—a permissive user of an insured vehicle who was not physically occupying the vehicle—Hawaiʻi courts broadened part one of the chain of events test to apply to permissive users of an insured vehicle:  (1) if a claimant qualifies as a passenger or a permissive user, (2) during the chain of events resulting in injury to the claimant caused by an accident involving an uninsured motor vehicle, the claimant is a "covered person" at the time of his or her injury who is entitled to receive UM benefits under the applicable UM policy.  See Liki, 118 Hawaiʻi at 128, 130-31, 185 P.3d at 876, 878-79.  Thus, under the chain of events test, the factual determination pivotal to determining UM coverage for a permissive user injured outside of the insured vehicle is whether the claimant "can demonstrate 'some connection with the insured vehicle.'"  Id. at 127-28, 185 P.3d at 875-76.

 Mizuno's case falls squarely within the chain of events test that this court has consistently applied when a claimant, who is injured outside of the insured vehicle, seeks UM coverage.  Mizuno, qualifies for UM coverage because he has "some connection with the insured vehicle" and is a permissive user.

13

Here, Mizuno is a permissive user because although he was not the named insured (or a resident relative of the named insured), he had Wong's permission to use her car.

Mizuno also demonstrated some connection to the insured vehicle. Mizuno had permission to use the vehicle to conduct an errand. Mizuno traveled to the site of the accident for the express purpose of mailing bills, carrying the bills to the location of the post office in the insured vehicle. Mizuno deposited the bills and was returning to the car at the time of the accident. The record establishes that Mizuno was at the crosswalk between his car and the post office when the accident occurred. State Farm Mut. Auto. Ins. Co. v. Mizuno, No. CV 16-00059 KJM, 2017 WL 3000023, at *1 (D. Haw. Apr. 30, 2017). Mizuno's close physical proximity with the vehicle corroborates that there was a connection between Mizuno, a permissive user, and the insured vehicle. See Liki, 118 Hawai'i at 130, 185 P.3d at 878 (holding that physical proximity to the insured vehicle can be considered "to the extent it tends to corroborate the connection between an injured employee of the named insured and the insured vehicle.").

State Farm contends that this court would be mandating "virtually limitless" coverage if we find that Mizuno is entitled to UM benefit's under Wong's policy because coverage would apply whenever "a UM . . . claimant used an insured

14

vehicle to get to a location where an accident later occurred." Contrary to State Farm's contention, virtually limitless coverage does not result from applying the chain of events test to the facts of this case. State Farm fails to recognize that the chain of events test is a fact-driven analysis when it argues "the accident could just as easily have happened if he were walking across the street to get to a bus stop, hail a cab or talk to a friend[;] . . . [t]he presence of the insured vehicle at the scene was purely incidental to the accident and Mizuno's injuries."

Here, Mizuno's accident did not occur when he was going to a bus stop, when he was hailing a cab, or when he was talking to a friend. Mizuno used the car to transport bills to deposit at the mailbox and was returning to the car. The presence of the vehicle at the scene was not "purely incidental to the accident." Mizuno was walking towards the car because it was the car that he drove to drop off the bills. Thus, Mizuno has demonstrated that he has "some connection with the insured vehicle" because he was a permissive user, was using the insured vehicle to transport and drop off mail, and was returning to the vehicle when he was injured. These facts are sufficiently similar to Dawes and Liki to establish that the chain of events test is satisfied.

15

## IV.  CONCLUSION

For the reasons discussed above, we answer the Ninth Circuit's certified question in the affirmative.  Under Hawai'i law, Mizuno is a permissive user of an insured vehicle and is entitled to UM benefits under the chain of events test.

Roy K.S. Chang                          /s/ Paula A. Nakayama
Harvey M. Demetrakopoulos
for Defendant-Appellant                 /s/ Sabrina S. McKenna

David R. Harada-Stone                   /s/ Michael D. Wilson
Richard B. Miller
Patricia K. Wall                        /s/ Christine E. Kuriyama
for Plaintiff-Appellee
                                        /s/ Matthew J. Viola

